DODGE TAYLOR, Appellant, v. B. A. WILLIAMS, *et al.,* Appellees; W. J. HOWEY COMPANY, *et al.,* Petitioners, v. B. A. WILLIAMS, *et al.,* Respondents.

196 So. 214

For Former Opinions See 142 Fla. 402, 415, 562
195 So. 175, 181, 184
Opinion Filed May 17, 1940

*Thos. B. Adams, Duncan, Hamlin & Duncan,* for Appellant and Petitioners;

*J. W. Hunter, Harry P. Johnson, Robert J. Pleus, D. C. Hull, Hull, Landis & Whitehair,* for Appellees and Respondents.

ON PETITIONS FOR REHEARING AND FOR MODIFICATION OF OPINION

PER CURIAM.—The amendment to the amended bill of complaint in the Howey case contains the following among other related allegations, viz. (page 63 of record):

"On the date of August 6, 1935, said R. E. Crummer & Co., acting for itself and on behalf of said other bondholder companies, entered into an elaborate refunding contract with said Board of County Commissioners for the refunding of said county-wide bonds and the refunding of all special road and bridge district bonds issued in said county. * * *

"* * * That under the terms of said refunding contracts the Board of County Commissioners on behalf of the County of Lake and of said road districts and the Board of Public Instruction on behalf of said school districts agreed to pay said refunding agency or said R. E. Crummer & Co. two per cent on the par value of all bonds refunded

in exchange for refunding bonds in consideration of accomplishing said refunding schemes and the employment and payment of counsel to approve the refunding bonds and the employment and payment of counsel to represent the county or said taxing districts severally in proceedings brought to validate the refunding bonds of said taxing units severally. That the said Lake County Refunding Agency and the said R. E. Crummer & Co. were in and about said refunding proceedings and said validation proceedings acting as dual agents for said bondholder creditors and the said taxing units, all with the result that the fees so promised by said refunding contracts were illegal. That neither said Board of County Commissioners acting for said county or said road districts nor said Board of Public Instruction acting for said school districts called for any competitive bids to perform the service called for by said refunding contracts although the fees so agreed to be paid for the services so to be rendered in each case ran into many thousands of dollars.

"That the lack of any competition in that behalf was another reason why the fees so promised to be paid were illegal and void. That the refunding bonds under the scheme provided for as to special road and bridge districts were void for the many reasons set forth in paragraph XXIII of this bill, all with the result that in no case was said Board of County Commissioners warranted in paying any fees to said Lake County Refunding Agency or to said R. E. Crummer & Co., or their nominees in and about procuring the issuance and validation of such special road and bridge district bonds. But notwithstanding all the aforesaid, the County Commissioners of said county on, to-wit: September 8, 1938, passed a resolution providing for payment to said Refunding Agency or to R. E. Crummer & Co., or their nominees the sum of $38,040.00 as refunding fees and

pursuant to a further resolution of said Board dated March 3, 1937, the further sum of $28,040.00 was paid to said Refunding Agency or to R. E. Crummer & Co., or their nominees. That pursuant to a third resolution dated July 12, 1937, a further sum of $14,840 was paid to said Refunding Agency or to R. E. Crummer & Co., or to their nominees as refunding fees. That at like periods the Board of Public Instruction of said county paid said Refunding Agency more than $13,000.00 as refunding fees. That since the dates aforesaid further sums have been paid or caused to be paid by said Board of County Commissioners and said Board of Public Instruction as refunding fees either to the members of said Refunding Agency or to R. E. Crummer & Co., or their nominees, aggregating large sums of money. * * *

"* * * The plaintiffs are further advised and believe and so allege that the State Board of Administration has paid out to said refunding agency and/or to its nominees large sums of money on account of said two per cent fee based on the par value of bonds exchanged as aforesaid. That all and singular such payments are illegal and those who received the payments, presumably the members of said Refunding Agency, should be required to restore the same to the State Treasurer of the State of Florida who is treasurer of the State of Florida who is treasurer *ex officio* of said county and of said special road and bridge districts. That said Board of Public Instruction in a similar illegal manner diverted moneys from the interest and sinking fund accounts of the several special tax school districts of said county for the purpose of paying such refunding fees to said Refunding Agency."

Such allegations and others had reference to the contract of 1935, and are admitted by the motion to strike, which was granted.

The bill of complaint prayed for an injunction against appropriate officials. The court denied an injunction and struck the amendment to the amended bill of complaint. An order appealed from also dismissed the State Treasurer as a party defendant.

The contract of August 6, 1935, contains the following:

"X. (A) That First party (the agent) shall defray all expenses incident to: (1) assembling the bonds proposed to be refunded; (2) printing the refunding bonds; (3) representing Second Party in legal proceedings to validate said refunding bonds and in any other litigation arising out of the refunding program; (4) obtaining the approving opinion of nationally recognized bond counsel upon the issuance and validation of the refunding bonds, said counsel to be selected by First Party; (5) all other expenses in connection herewith which may be approved by First Party.

"(B) In obtaining legal representation for Second Party in the validation proceedings, First Party shall engage counsel resident in Lake County satisfactory to Second Party, provided an agreement can be reached between First Party and the attorney selected by said Second Party as to fees and compensation for such services to be performed in carrying out the purposes of this refunding program. If an agreement as to compensation and fees cannot be reached, then the First Party shall be entitled to engage other counsel for the purposes specified.

"XI. That Second Party will reimburse First Party for expenses incurred and services rendered in connection herewith in the following manner, the language being considered as applying separately to the bonds to be refunded into the Road and Bridge General, and the several Road and Bridge District Refunding Bonds provided for and authorized herein.

"(A)  That said First Party, or its assignee, shall be paid two (2%) per cent on the par value of all of the outstanding bonds exchanged for refunding bonds hereunder during the period beginning July 1, 1935, and ending July 1, 1938."

In the briefs for appellants in the two companion cases it is urged that:

"The contract (of 1939) is void because it, like the contract of August 6, 1935, and the basic resolutions of April 6, 1936, * * * undertakes to delegate the public duties of sundry officers of Lake County to a private corporation, to-wit: R. E. Crummer & Company, and that cannot be done consistent with the statutes and Constitution of this State.

"Said contract underetakes to authorize the unlawful practice of law by R. E. Crummer & Company, a Delaware corporation."

"The first party, that is to say, R. E. Crummer & Company, will defray all expenses incident to the exchange of bonds, printing of bonds and (c) the representation of second party in legal proceedings to validate said refunding bonds; (d) obtain the approving opinion of nationally recognized bond counsel upon the procedure used, etc., (e) all other expenses in connection herewith which may be approved by first party.' "

"Under both contracts R. E. Crummer & Company are given specific authority to engage counsel and pay them such amounts as R. E. Crummer & Company may see fit, to prosecute validation proceedings.  All expense in that behalf is included in the so-called two per cent refunding fee to R. E. Crummer & Company.  In all such cases R. E. Crummer & Company is the real employer and the real client of the lawyer and not the taxing unit which he purports to represent in such refunding proceedings."

The briefs also contain the following:

"QUESTIONS Nos. XXI and XXII (relating to the 1935 contract): "Was the payment of two per cent refunding fees out of sinking fund accounts as complained of in Section XIII of the amendments to the amended bill (see Howey Company record, page 62) illegal, and if so, were appellants entitled to a reduction in their 1938 assessments on that account?

"Are appellants as taxpayers entitled to have the amount of the illegal payments of two per cent refunding fees restored to the respective funds illegally depleted by such payments?

"These questions are presented by Section XIII of the amendments to the amended bill and that section is found on pages 62 to 66 of the Howey Company record. The refunding contract (of 1935) and particularly the portion thereof providing for the payment of two per cent fees was void for all of the reasons heretofore set forth under the discussion of question No. XI" in the Taylor case.

"Among other things, the provisions of Section X and XI of the original refunding contract, as found on Page 57 of the Dodge Taylor record, constitute the unlawful practice of law by R. E. Crummer & Company, a Delaware corporation. The authorities to support this proposition have been previously cited. * * * Said refunding contract was void and the payment of the two per cent refunding fees was void. * * * The provisions for the payment of the refunding fees were not that the same should be paid as current expenses of the taxing units in question but instead that such expenses should directly or indirectly add to the bonded or continuing indebtedness of the taxing units respectively."

The above quoted and other related allegations and con-

tentions are by express reference made applicable to the refunding contract of 1935.

The contract of 1935 and the contract of 1939 are similar. Both appear in the Taylor record and are so referred to in the briefs which cover both cases.

In response to the above and other related allegations and contentions as to the refunding contract of 1935 and payments made thereunder, the opinion in the Howey case refers to the opinion in the companion Taylor case which contains the following:

"In the issuing of bonds to be paid by taxation, the official duties of the county commissioners include the administrative function of providing directly for the printing, approval and other legal or fiscal matters, not including mere technical or ministerial services which may be performed by employees. * * * The law does not contemplate or permit the appointment of a foreign corporation representing 'the holders of a substantial portion of the outstanding bonds' as fiscal agent for the county or districts in managing or controlling any of the official functions involved in the issuing of refunding bonds. * * * Nor does the law permit the payment of money from the sinking funds of the county or districts as fees for a refunding agent. Pierce v. Isaac, 135 Fla. 101, 184 So. 669. When such an agent may legally be employed for services in no wise official in their nature, proper compensation for such service may be provided for as the law authorizes."

Contentions like these above were not decided in Pierce v. Isaac, 135 Fla. 101, 184 So. 669; 134 Fla. 666, 184 So. 509.

Without discussing matters that may involve issues of fact, the two companion cases were remanded for appropriate proceedings so that proper issues may be made and adjudicated in due course.

The allegations of Section XIII of the amendment to the amended bill of complaint in the Howey case relative to the contract of 1935 and to payments thereunder should not have been stricken. They require an answer.

Ad valorem taxes levied for, and gas taxes allocated to, county and road and bridge district bond payments, cannot legally be used for refunding bond expenses, or commingled with revenues raised to pay refunding bond expenses.

Taxation of homesteads is not involved in the disposition of these companion cases.

The Constitution provides for the enactment and interpretation of statutes that are laws under the Constitution. Whether the laws are adequate for intended governmental purposes is determined by the Legislature.

The motions made in each of the two cases are severally denied.

TERRELL, C. J., WHITFIELD, P. J., BROWN and CHAPMAN, J. J., concur.

BUFORD, J., dissents.

THOMAS, J., not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BROWN, J. (concurring).—The conclusions reached in the foregoing opinion are fully justified by this Court's previous opinions and decisions in Taylor v. Williams, 195 So. 175, and Howey Co. v. Williams, 195 So. 181, which were handed down by a unanimous Court; also by the opinion rendered in both of these cases on petitions for rehearing (see 195 So. 184), wherein Mr. Justice BUFORD and the writer dissented in part from the views of the four members constituting the majority, but otherwise concurred, Mr. Justice BUFORD's opinion being filed as a special concurring opinion. Therefore, the questions attempted to be

raised by the additional motions filed herein have been heretofore settled after full briefing and argument and careful consideration by the members of the Court, and I therefore concur in the conclusions reached in the foregoing opinion, as well as in the order denying said motions.