251 So.2d 268 (1971)
Fred O. DICKINSON, Jr., As Comptroller of the State of Florida, and As Head of the Department of Banking & Finance, Petitioner,
v.
Honorable Richard B. STONE, As Secretary of State and As Head of the Department of State et al., Respondents.
No. 41377.
Supreme Court of Florida.
August 3, 1971.
Rehearing Denied August 24, 1971.
*270 Larry Levy, Asst. Gen. Counsel, for petitioner.
Robert L. Shevin, Atty. Gen., and Daniel S. Dearing, Chief Trial Counsel, for Department of Legal Affairs, for respondents.
Clinton H. Coulter, Jr., Tallahassee, for respondent, Richard B. Stone, Secretary of State.
James E. Joanos, Tallahassee, for Richard A. Pettigrew, as amicus curiae.
ADKINS, Justice.
This is an original proceeding in mandamus brought by the Comptroller and Head of the Department of Banking & Finance against the Secretary of State, the Executive Director of the Department of General Services and the Department of General Services, raising constitutional questions concerning the validity of § 2, Ch. 71-357, Laws of Florida, the General Appropriations Act, the pertinent part of which provides:
"Section 2. The moneys in the following items are appropriated from the named funds for the 1971-72 fiscal year to the electronic data processing division of the department of general services for the centers indicated, as the amounts to be used to pay the salaries and other expenditures of the named data centers.
"It is the intent of the legislature that the electronic data processing division of the department of general services shall assume complete control and supervision of the designated data centers in this section, including accounting, purchasing, personnel and other administrative services for the purpose of providing adequate data processing services to the various users of these centers. Further, the electronic data processing division of the department of general services is directed to provide programming and coordination, to the end that all centers function efficiently and economically and render all possible service to the state departments and agencies serviced.
"Each center will bill the user for services performed, based upon a cost allocation system which will include a percentage of machine time, overhead, etc. Bills to the user will be for services performed and not a percentage of that amount appropriated to that agency for data processing services provided, however, that the department of administration may transfer funds appropriated for the payment of data processing services between departments to carry out the purpose of this section, and to permit departments to meet their data conversion requirements in the event the OCR center does not perform efficiently and economically, and is unable to meet these requirements.

"Item Amount
 $
 CARLTON DATA CENTER
 From Working Capital
 Trust Fund
 1. Salaries, Retirement and
 S.S. Matching of 96
 Positions 726,433
 2. Expenses 1,114,745
 3. Operating Capital Outlay 13,000"

(Emphasis supplied)
*271 The Comptroller alleges that the abovequoted portion of the General Appropriations Act purports to transfer to the Department of General Services the supervision and control of the personnel and data processing equipment which are vital and absolutely necessary to the Comptroller for the complete exercise of his official constitutional duties of issuing orders and warrants and settling and approving accounts against the State as set forth in Fla. Const., art. IV, § 4(d) and (e), F.S.A. He seeks a writ of mandamus commanding the Secretary of State to expunge from the "official acts of the legislative department" those parts of the General Appropriations Act, Ch. 71-357, Laws of Florida, quoted above, purporting to transfer from the office of the Comptroller or the Department of Banking & Finance to the Department of General Services, personnel, salaries and other moneys, equipment, et cetera, of the office of the Comptroller or the Department of Banking & Finance. Respondents filed a motion to quash the alternative writ and also filed the returns to the alternative writ.
Under ordinary circumstances, this Court prefers that the constitutionality of a statute be considered first by a trial court. The case sub judice, however, involves a provision in the General Appropriations Act of 1971 so that the functions of government will be adversely affected unless an immediate determination is made by this Court. Mandamus is a legal remedy which is not awarded as a matter of right, but in the exercise of sound judicial discretion. See 16 F.L.P., Mandamus, § 8.
A State officer is named as respondent in the petition and the Comptroller is entitled to interpose the question of the constitutionality of the portion of the Appropriations Act quoted above. The motion to quash is denied. Fla. Const., art. V, § 4(2); F.A.R. 4.5(b), 32 F.S.A.; 21 Fla. Jur., Mandamus, § 51.
We now proceed to the merits.
Fla. Const., art. III, § 12, provides as follows:
"Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject."
We construed this provision of the Constitution in Advisory Opinion to the Governor, 239 So.2d 1 (Fla. 1970), and said:
"That the Legislature does not have the power nor the right under the Constitution of this State to make law in an appropriations bill on other subjects, unless the other subjects are so relevant to, interwoven with, and interdependent upon, the appropriations so as to jointly constitute a complete legislative expression on the subject." (p. 11)
In the Advisory Opinion to the Governor, supra, we held that there was no constitutional impediment to an appropriation being made contingent upon the enactment of another law reasonably related to the appropriation and where there was direct and relative interdependence between them. However, we pointed out that the appropriation may not be made to depend upon entirely unrelated events. In its opinion, this Court said:
"It would be inappropriate for us, at this time, to undertake to analyze all the provisions of House Bill 5210 and discuss in detail all qualifications and restrictions upon appropriations found in this law. Much of your communication consists of pointing out dangers which you fear may arise from future efforts on the part of the Legislature to unduly restrict the Chief Executive in the exercise of the power of veto and in so drafting appropriation bills as to make them instruments of `logrolling' contrary to the intent of Secs. 6, 8 and 12, Article III. We have carefully considered these observations and, while they may well be of academic interest, we do not find such comments to require a judicial interpretation at this time." (p. 11)
*272 It should be specifically noted that the General Appropriations Act of 1971 was upheld as against a general attack. In the case sub judice, a specific item is attacked, not on the ground that the appropriation is based upon the happening of a contingency, but on the ground that the appropriation also transfers certain duties of government from one department to another. There is no contingency expressed in the Act. Instead, there is an absolute transfer of the control and supervision of the data center from the Comptroller to the Department of General Services.
The title to Ch. 71-357, the General Appropriations Act, reads as follows:
"An Act making appropriations; providing moneys for the annual period beginning July 1, 1971, and ending June 30, 1972, to pay salaries, other expenses, capital outlay  buildings and improvements, and for other specified purposes of the various agencies of state government; providing an effective date."
Fla. Const., art. III, § 6, contains the following provision:
"Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title."
The aim and purpose of incorporating §§ 6 and 8, art. III, in the Constitution of Florida, may be summed up as follows:
First, to prevent hodgepodge or logrolling legislation;
Second, to prevent surprise or fraud upon the Legislature by means of including a provision in a bill of which the title gives no intimation and which might therefore be overlooked and carelessly and unintentionally adopted; and
Third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the suggestions of legislation that are being considered, in order that they may have opportunity of being heard thereon if they shall so desire. See State ex rel. Attorney General v. Green, 36 Fla. 154, 18 So. 334 (1895).
Provisions identical with Fla. Const., art. III, § 12 (1968), were included in the Constitution of 1885. In discussing this provision in Lee v. Dowda, 155 Fla. 68, 19 So.2d 570 (1944), this Court said:
"It is manifest that the Constitution considered this matter of appropriation laws so important that it required they should be freed from all log rolling, by putting into such bills riders dealing with any other subject whatsoever, so that the attention of the Legislature should be concentrated upon the wisdom of and the necessity for the several items of appropriations made by and enumerated in the bill, and so also that the public could rest assured that when an appropriation bill was up for consideration in the Legislature nothing would be considered but the appropriations, and that this important matter should not be prejudiced by the injection into the appropriation bill of any other matters, regardless of their inherent merits or demerits." (p. 571)
The obvious purpose of that portion of § 2, Ch. 71-357, quoted and emphasized above, was to transfer certain duties previously exercised by the Comptroller to the Division of Electronic Data Processing of the Department of General Services. See Fla. Stat. § 23.021, F.S.A., et seq. Fla. Stat. § 23.027, F.S.A., contains the following provision:
"The division shall be authorized to:
"(1) Establish and supervise the administration of data processing centers deemed necessary to best serve the data processing needs of all agencies. It may designate an existing agency as a data processing center.
"(2) Arrange for and effect the centralization, consolidation and community use of equipment and services deemed necessary to obtain maximum utilization *273 and efficiency in data processing operations.
"(3) Transfer to any data processing center the data processing activities of any agency.
"(4) Transfer to, or utilize in, any data processing center the data processing equipment presently in use on the effective date of this act or to be subsequenly acquired by any agency whose data processing activities are assigned to a data processing center.
"(5) Direct and coordinate the efforts of data processing systems and operating personnel employed by the various agencies as deemed necessary to achieve effective and economical data processing services.
"(6) Arrange for the transfer of data processing systems and operating personnel employed by any agency to any data processing center as such personnel are required in the operation of any such data processing center."
Fla. Stat. § 23.027, F.S.A., does not by its term effect the transfer of any data processing system and operating personnel employed by the Comptroller to the data processing center. We are not confronted with the quesion of whether the provision of Fla. Const., art. IV, § 4(d) and (e) would prevent the Legislature from transferring the supervision and control of the personnel and equipment used in the preauditing preparation and issuance of state warrants from the Comptroller to the Division of Electronic Data Processing of the Department of General Services. The sole question is whether such a transfer, if constitutional, could be effected in the Appropriations Act. We are of the opinion that any such attempted transfer should be made by general law. Any discussion as to the benefits to be accomplished by such a transfer is inappropriate under the issue in the case sub judice. However laudable legislation may be, the terms of the Constitution approved by the people should not be ignored. If such a transfer is the will of the Legislature and is constitutional, there should be no problem in effecting this transfer, as well as any other transfer, by general law instead of using the hidden recesses of the General Appropriations Act.
A question arises in connection with the jurisdiction of this Court to transfer the appropriation made for the Carlton Data Center from the Department of General Services to the Comptroller of Department of Banking & Finance. In view of the fact that jurisdiction is vested in this Court for the reason that a state officer is named as respondent in mandamus proceeding, we have determined to issue a peremptory writ of mandamus, in our discretion, because of the emergency situation caused by the inclusion of improper provisions in the General Appropriations Act. We accept jurisdiction for the purpose of determining the nature and validity of the appropriation not because of the reason we considered the petition for writ of mandamus but by virtue of the provision of Fla. Const. art. V, § 4(2), which provides:
"The supreme court may issue all writs necessary or proper to the complete exercise of its jurisdiction."
See also F.A.R. 4.5(g) (1); Couse v. Canal Authority, 209 So.2d 865 (Fla. 1968); Mize v. County of Seminole, 229 So.2d 841 (Fla. 1969).
Fla. Const., art. VII, § 1(d), (1968), requires that provision be made by law for raising sufficient revenue to defray the expenses of the State for each fiscal period. Unless otherwise expressly provided by law, appropriated money should be expended only for the purpose for which they were appropriated. It is a violation of an elemental principle in the administration of public funds for one who is charged with the trust of their proper expenditure not to apply those funds to the purposes for which they are raised. See Oven v. Ausley, 106 Fla. 455, 143 So. 588 (1932); Supreme Forest Woodmen Circle v. Hobe Sound Company, 138 Fla. 141, 189 So. 249 (1939); *274 Taylor v. Williams, 142 Fla. 756, 196 So. 214 (1940). The funds appropriated for the Carlton Data Center were appropriated for a certain purpose, and the fact that the funds were erroneously appropriated as a part of the budget of the Department of General Services does not prevent the appropriation following the responsibilities and duties into another department when this Court determines that the funds were appropriated to the wrong agency or department.
The appropriation should be used to pay the salaries and other expenditures as prescribed for the Carlton Data Center, but the following portion:
"It is the intent of the legislature that the electronic data processing division of the department of general services shall assume complete control and supervision of the designated data centers in this section, including accounting, purchasing, personnel and other administrative services for the purpose of providing adequate data processing services to the various users of these centers. Further, the electronic data processing division of the department of general services is directed to provide programming and coordination, to the end that all centers function efficiently and economically and render all possible service to the state departments and agencies serviced."
is void as a clear violation of Fla. Const., art. III, § 12, and should be expunged by the Secretary of State. The funds appropriated to pay the salaries and other expenditures of the Carlton Data Center should be considered as a part of the budget of the Comptroller or Department of Banking & Finance instead of the Electronic Data Processing Division of the Department of General Services, and made available for the purposes for which it was intended, namely, the payment of salaries and expenses of operating the department.
In summary, we hold:
1. That the portion of the General Appropriations Act of 1971, transferring the supervision and control of the Carlton Data Center from the Comptroller to the Department of Public Services, was not so relevant to, interwoven with, and interdependent upon the appropriation of funds for the operation of the Carlton Data Center so as to justify under the constitutional provision (Fla. Const., art. III, § 12) its inclusion within the General Appropriations Act. Furthermore, the title to Ch. 71-357, Laws of Florida, was deficient under Fla. Const., art. III, § 6, in failing to mention the attempted transfer.
2. The important matter of providing appropriation for the operation of the government of the State of Florida should not be prejudiced by the injection into the appropriation of any other subjects, regardless of their inherent merits or demerits, unless such other subjects are so relevant to, interwoven with, and interdependent upon the appropriations so as to jointly constitute a complete legislative expression on the subject.
3. The appropriation for the Carlton Data Center is considered as a part of the budget of the Comptroller instead of the Department of General Services and shall be made available for the purpose for which such appropriation was intended.
A peremptory writ of mandamus shall issue commanding the respondent Secretary of State to expunge from § 2, Ch. 71-357, Laws of Florida, the language quoted above beginning "It is the intent of the legislature * * *" and ending with the words "* * * render all possible service to the state departments and agencies serviced," and further commanding that the Department of General Services take no action nor perform any activity inconsistent with the opinion hereinabove expressed.
It is so ordered.
*275 ROBERTS, C.J., concurs specially with opinion.
CARLTON, BOYD and McCAIN, JJ., concur and concur with ROBERTS, C.J.,
ERVIN, J., dissents with opinion.
ROBERTS, Chief Justice (concurring specially).
I concur in the able opinion of Mr. Justice Adkins. Section 12 of Article III, Constitution of Florida, providing as follows,
"Section 12. Appropriation bills.  Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject."
first appeared when the people wrote it into the Constitution as Section 30, Article IV, Constitution of 1868. It was again submitted and readopted as Section 30 of Article III, Constitution of 1885, and again on resolution of the Legislature was submitted and adopted by the people as Section 12 of Article III, Constitution of 1968. Thus, three times, beginning with 1868, the provision has been adopted as a part of our Constitution. In Lee v. Dowda, 155 Fla. 68, 19 So.2d 570 (1944), long prior to the service of any Justice of the Court as now constituted, this Court clearly defined the impact of the Section giving the reasons therefor and designating certain guidelines. Interestingly, a similar problem was before this Court at an early date and on February 19, 1872 in an opinion authored by Justice James D. Westcott, Jr., reported at 14 Fla. 284, this Court said:
"The effect of the clause of the Constitution which you mention is to render everything in a law which may be called strictly "a law making appropriations" unconstitutional which proposes to do anything other than make appropriations. The third section of the "General Appropriation Bill," which you call to our attention, does not make an appropriation, and for this reason it is in our opinion unconstitutional and therefore void."
Notwithstanding this long history of adoption by the people, if the Legislature deems that it is improper, they have the right to resubmit it in another constitutional amendment, but until that is done and a change made by the people, Section 12 of Article III, IS THE LAW.
CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.
ERVIN, Justice (dissenting):
The Legislature has, for the past four years, shown its intent to consolidate in the interest of economy and efficiency the state's data processing centers  i.e., its computer processing work  under one head.
The 1967 Legislature enacted the Electronic Data Processing Management Act (Ch. 23, Part II, F.S.), creating the Division of Electronic Data Processing under the Governor and the Cabinet as its governing board or head. Its professed purpose was to "achieve the most efficient and economical operation of data processing equipment and services in state government," (preamble to Chapter 67-253, Laws of Florida, 1967).
Under F.S. Section 23.027, F.S.A., the division was authorized to
"Establish and supervise the administration of data processing centers deemed necessary to best serve the data processing needs of all agencies. It may designate an existing agency as a data processing center." (e.s.)
Subsequent to the enactment of Chapter 23, Part II, F.S., the 1968 revised Constitution was ratified by the people. Section 6, Article IV thereof provided for the reorganization of the executive branch of the state government to be allotted among not more than twenty-five departments.
Pursuant to this mandate, the Governmental Reorganization Act was enacted by *276 the 1969 Legislature as Chapter 20, F.S. Thereunder, by a type three transfer (F.S. § 20.06(3), F.S.A.), the Division of Electronic Data Processing established by Chapter 23, Part II, in 1967 was transferred to the Department of General Services (F.S. § 20.22(4), F.S.A.) which is headed by the Governor and Cabinet just as was the Division of Electronic Data Processing.
Section 6 of Article IV of the 1968 Constitution, which authorizes the twenty-five executive departments, contains a proviso that these departments are, "exclusive of those specifically provided for or authorized in this constitution." In the context of this litigation the proviso just quoted must be read in connection with Section 4, Article IV of the 1968 Constitution relating to the Cabinet which, inter alia, provides:
"(d) The comptroller shall serve as the chief fiscal officer of the state, and shall settle and approve accounts against the state.
"(e) The treasurer shall keep all state funds and securities. He shall disburse state funds only upon the order of the comptroller, countersigned by the governor." (Emphasis supplied.)
It is obvious, of course, that insofar as the constitutional duties of the Comptroller are concerned they take precedence over the authority reposed in any of the twenty-five executive departments authorized by Section 6 of Article IV.
The question, however, involved here is whether it logically follows that insofar as the mechanical or ministerial work of electronic data processing for the state and all its agencies is concerned are the constitutional duties of the Comptroller improperly and unduly impinged upon by the authority of Chapter 23, Part II, F.S., and its subsequent transfer into the Department of General Services.
A subsidiary question is whether there was an inclusion of unconstitutional, unrelated, non-germane, non-interdependent language in the 1971 General Appropriations which standing alone or when read in conjunction with the already enacted related language of Chapters 20 and 23 providing for the centralization and combining of the state's electronic data processing operation, improperly affects and impinges upon the constitutional duties of the Comptroller, and is also contrary to Section 12, Art. III, State Constitution.
I think the answer to these questions is in the negative.
The Legislature should not be prohibited from enacting regulations in governmental areas that do not trench upon or impinge the constitutional prerogatives and duties of constitutional officers or agencies. Unless it is clearly shown by competent evidence that the mere mechanical computerizing processing of the accounts of the state and the preparing of state warrants unduly impinges upon the constitutional duties of the Comptroller, we should not intrude judicially in this bureaucratic dispute. It is not for us to postulate such impingement from mere pleading allegations here submitted without convincing proof. It is not for us to immunize one executive officer's enclave or official domain from an overall regulation of all agencies as a territorial whole where there is no demonstrated interference with such officer's constitutional sphere of operation.
Conceivably, this internecine conflict between General Services and the Comptroller relating to the matter of electronic data processing could be amicably administratively adjusted pursuant to statutory authority. The Comptroller is a member of the governing head of the General Services Department. He should be able to secure cooperative consideration from the Governor and his fellow Cabinet members in the area of data electronic processing insofar as his constitutional prerogatives are concerned. However, if his colleagues unreasonably and arbitrarily impinge upon his constitutional function in this area he should be able to secure judicial relief.
*277 The provisions of Chapter 23, Part II, F.S. provide sufficient authority and flexibility for cooperation and adjustment between any department or agency and the electronics data division.
Even if the complained of language, set forth in detail in the majority opinion, appearing in Section 2 of Chapter 71-357, the General Appropriations Act of 1971, standing alone is violative of Section 12 of Article III of the State Constitution, it is merely a restatement of the language of F.S. Section 23.027, F.S.A. expressing the legislative intent for General Services to
"(1) Establish and supervise the administration of data processing centers deemed necessary to best serve the data processing needs of all agencies. It may designate an existing agency as a data processing center.
"(2) Arrange for and effect the centralization, consolidation and community use of equipment and services deemed necessary to obtain maximum utilization and efficiency in data processing operations.
"(3) Transfer to any data processing center the data processing activities of any agency.
"(4) Transfer to, or utilize in, any data processing center the data processing equipment presently in use on the effective date of this act or to be subsequently acquired by any agency whose data processing activities are assigned to a data processing center.
"(5) Direct and coordinate the efforts of data processing systems and operating personnel employed by the various agencies as deemed necessary to achieve effective and economical data processing services.
"(6) Arrange for the transfer of data processing systems and operating personnel employed by any agency to any data processing center as such personnel are required in the operation of any such data processing center.
"(7) Cooperate with the division of personnel and retirement and other interested agencies in acquiring the retention and reassignment of any state employee whose employment might be terminated as a direct result of the consolidation or extension of data processing services as herein provided." (Emphasis supplied.)
With the foregoing statutory predicate enacted in 1967 and reaffirmed in the Reorganization Act of 1969, it is quite clear it lay within the power of the 1971 Legislature in its General Appropriations Act to fully implement such authority by a lump sum appropriation. It could, under this statutory authority, make specific appropriation to the Department of General Services to achieve these objectives and refuse to appropriate funds to other agencies, including the Comptroller, for expense of electronic data processing. This in fact is what the 1971 Legislature did in this instance in its General Appropriations Act  which it had a right to do. The intent and authority for such consolidation was already spelled out in the 1967 Act and the complained of language was not necessary. It was a repetition of what had already been statutorily intended and indicated as legislative policy four years before. No doubt one of the prime reasons dictating the legislative policy to establish a unified data processing center in lieu of several for various state agencies is the high costs of computer machines and equipment, as well as the great expense in maintaining expert programming personnel.
However, the language complained of by the Comptroller which appears in Section 2 of Chapter 71-357, Laws of Florida, the 1971 General Appropriations standing alone does not violate Section 12 of Article III, State Constitution. It is the equivalent of any apt statutory language saying that the items of $726,433 for salaries, etc., and $1,114,745 for expenses are appropriated exclusive of appropriations to other agencies *278 to the Electronic Data Processing Division of the Department of General Services for the fiscal year 1971-72 for operating the Carlton Data Center. If no appropriation for electronic data processing is made for the Comptroller or any other state agency in response to his or its budget request therefor, the obvious result is that the language of Chapter 23, part II, is being implemented by the 1971 Legislature by funding the consolidated operation of the Electronic Data Processing Division to the exclusion of other agencies for whom no appropriation is made. The complained of language in Section 2 of Chapter 71-357 is a mere recap of already expressed legislative intent.
Can it be said seriously that the Legislature by granting to one state agency the primary appropriation in the General Appropriation Act for a particular state service which it is already authorized to perform, may not in doing so constitutionally withdraw a similar service previously performed by another agency?
We very clearly indicated this could be done in our advisory Opinion to Governor Kirk, 1970, Fla., 239 So.2d 1, which, incidentally, was prepared by our now Chief Justice, B.K. Roberts. I thought then and think now he prescribed reasonable guidelines to achieve a harmonious rationality in this troublesome area of constitutional interpretation. There, we said that language in the form of explanation, qualification, or restriction in a general appropriations act which is obviously interwoven with and relevant to and interdependent upon a particular item of appropriation is valid. We also pointed out that Section 12 of Article III should be read in connection with a new provision in the 1968 revision, Section 8, Article III, that the Governor cannot veto any specific appropriation in a general appropriation bill without also vetoing any qualification or restriction tied to it. This new constitutional provision clearly recognizes the right of the Legislature to qualify, explain, and restrict items of appropriation in the General Appropriations Act. We said appropriations may constitutionally be made contingent upon matters or events reasonably related to the subject of the appropriation. Here, the matter of centralization and consolidation under one head of the electronic data processing work of all state agencies has been an avowed goal of the Legislature in an expressed statutory enactment for the past four years  and a specific appropriation to achieve such objective would appear to be genuinely and relevantly related without taint of "log-rolling." We expressly said in the Kirk Advisory: "There is no constitutional impediment to an appropriation being made contingent upon another bill, reasonably related to the appropriation and where there is a direct and relative interdependence between them, becoming law." (Supra, at 9.) Here, we are not as far removed from relevancy as in the case of an item of appropriation which has to be made contingent on the passage of another bill. We already had the enabling statute, Chapter 23, Part II, awaiting implementation by specific appropriation. Finally, as if to clinch the validity of the item of appropriation under attack here which our present Chief Justice clairvoyantly would appear to have foreseen and set at rest in futuro when he wrote in the Kirk Advisory: "We find no constitutional impediment to a General Appropriations Bill making allocations of State funds for a previously authorized purpose in amounts different from those previously allocated * * *" (Supra, at 10.)
It is quite evident from a comparison of the General Appropriations Act for the fiscal period 1970-71 (Chapter 70-95) with Chapter 71-357 and the budget requests of the Comptroller and the Electronic Data Processing Division of the Department of General Services, that the 1971 Legislature decided to follow the suggestion in our Kirk Advisory Opinion just quoted and give General Services a large, increased, lump sum appropriation for consolidated electronic data processing at the Carlton Data Center in the current General Appropriations *279 Act rather than to continue appropriations previously allocated to certain other departments, including the Comptroller's. No continuing appropriation was involved.
The language under attack appears to be completely interwoven with the appropriation to the Department of General Services' Data Processing Division. That appropriation was based on centralized, economical control of certain listed data processing centers. Without such centralization, the appropriation to each individual center would in all probability be insufficient. A holding that the section does not constitute "a complete legislative expression on the subject" seems inconceivable. This is not an example of the "log rolling" forbidden by Lee v. Dowda, 155 Fla. 68, 19 So.2d 570. It is an essential part of the appropriation, an appropriation made to the Department of General Services to operate the Carlton Data Center as authorized by F.S. Section 23.027, F.S.A.
Because the challenged statement in Section 2 is an integral part of the appropriations bill, I also cannot agree with the majority's statement that "the title to Ch. 71-357, Laws of Florida, was deficient under Fla. Const., art. III, § 6, in failing to mention the attempted transfer." The title of the Appropriations Act states that it is "an act making appropriations," for the fiscal period which is exactly what the challenged section has constitutionally done.
Placing the control of the administrative and clerical duties of the Carlton Data Center in the hands of the Department of General Services in no way infringes upon the Comptroller's constitutional power. He may still order warrants to be drawn, and he can check each warrant before it is sent to a payee. He is still "the chief fiscal officer of the state" and he still may "settle and approve accounts." The only authority he does not have (and this authority was never a constitutional one) is the power to personally oversee the actual running of data processing equipment. In the interest of economy and efficiency this authority has been centralized.
This Court usually adheres to the rule that if at all possible the constitutionality of a statute should be upheld. (Burr v. Florida East Coast Ry. Co., 1919, 77 Fla. 259, 81 So. 464; Rich v. Ryals, Fla. 1968, 212 So.2d 641.) There was sound precedent to do so here.
The majority opinion represents a departure from our Kirk Advisory which in a nontechnical spirit provided practical guidelines to accommodate the multitudinous budgetary problems yearly confronting the Legislature.
If this were a true case of "log-rolling" where an unreasonable result was foisted upon any segment of the public without notice or awareness, I would be among the first to agree to its invalidity. But in this bureaucratic area of dispute there is no such baneful result. The principals involved here are public officers and agencies subject annually as they are well aware, to review as to their fiscal needs by the Legislature in its consideration of the General Appropriations Bill. Even in the most technical and strictest constitutional sense there was no "log rolling" indulged in by the Legislature as to them. As we envisioned constitutional principles in the Kirk Advisory, it lay within the power of the Legislature to fund or not to fund the expense of electronic data processing by an appropriation or appropriations either to one agency or to all or some of them in the General Appropriations Act.
Lastly, I am particularly dismayed by the Court arrogating to itself a prime function of the Legislature by ordering the Secretary of State to expunge the language under attack followed by the Court transferring part of an appropriation of state funds from one state department to another. *280 Even the Governor has to veto an appropriation item as a whole including the language accompanying it.
Here we do not content ourselves with holding the language under attack unconstitutional and either invalidating the language itself or the item as well, but we take over the legislative function to complete what in our wisdom we think ought to have been done by rewriting the item as a whole by expungement and by transferring the lump sum appropriation made to one department to another.
This is quite a novel innovation. It represents a judicial intrusion in the legislative field and particularly in the area of legislative appropriations for which I can find no precedent.

On Petition for Rehearing
Rehearing denied.
ROBERTS, C.J., and CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.
ERVIN, Justice (dissenting):
I think the petition for rehearing should be granted. Because of the historic importance of this case, I think it appropriate to state my reasons with citations of authority.
1. In expunging the language complained of appearing in Section 2 of Chapter 71-357, the General Appropriations Act, and transferring to the Comptroller the legislative appropriation made to the Department of General Services in the amounts of $726,433 for salaries, and $1,114,745 for expenses, the Court overlooks the fact it has entered into the legislative field of discretion and legislates, contrary to the rationale of such cases as Holley v. Adams, Fla., 238 So.2d 401; Radio Tel. Communications, Inc. v. Southeastern Tel. Co., Fla., 170 So.2d 577; Aldrich v. Aldrich, Fla., 163 So.2d 276; Hancock v. Board of Public Instruction of Charlotte County, Fla., 158 So.2d 519; In re Investigation of Circuit Judge of Eleventh Judicial Circuit, Fla., 93 So.2d 601; State v. City of Fort Pierce, Fla., 88 So.2d 135; Copeland v. Copeland, Fla., 53 So.2d 637; Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102, and Nelson v. State ex rel. Gross, 157 Fla. 412, 26 So.2d 60.
In Pepper v. Pepper, Fla. 1953, 66 So.2d 280, this Court said:
* * * * * *
"* * * For the Judicial Department of the Government to attempt so to amend or modify an Act of the Legislature would constitute an unlawful encroachment by the Judiciary on the Legislative powers, and would be in direct violation of Article 2 of the Constitution of Florida because of the attempt on the part of the Judicial branch to exercise powers appertaining to the Legislative Department of the Government. * * *"
2. In holding unconstitutional the language in Section 2, Chapter 71-357, the Court overlooked what it said in In Re Advisory Opinion to the Governor, Fla., 239 So.2d 1:
"The Constitution expressly recognizes the power of the Legislature to make appropriations subject to qualifications and restrictions. * * * Such qualifications and restrictions may not go to the extent of changing other substantive law, but they may limit or qualify the use to which the money appropriated may be put and may specify reasonable conditions precedent to their use, even though this may leave some governmental activities *281 under-financed in the opinion of officers of other departments of government." (Text p. 10.)
3. The Court overlooks that the language in Section 2, Chapters 71-357, merely qualifies and restricts expenditures of the items appropriated therein to the use of Electronics Data Processing Division of the Department of General Services in furthering the centralization and consolidation of computer services for all state agencies, as had already been specifically provided by law in Section 23.027, Florida Statutes, F.S.A.
I would grant the petition for rehearing and discharge the writ permitting the legislative program (expressly enacted into law four years ago) for centralizing and consolidating electronic data processing for all state agencies to go forward without judicial interposition immunizing the Comptroller's office from the program.