Mr. Nicholas F. Tsamoutales City Attorney City of Palm Bay 4690 Lipscomb Street, N.E., Unit 9 Palm Bay, Florida 32905
Dear Mr. Tsamoutales:
This is in response to your request for an Attorney General's Opinion on substantially the following question:
 IS THE CITY OF PALM BAY AUTHORIZED TO UTILIZE EXCESS PROCEEDS FROM A TAX LEVY TO FINANCE THE ACQUISITION AND CONSTRUCTION OF A SPORTS COMPLEX FOR ANY OTHER PROJECT OR MUNICIPAL PURPOSE?
The City of Palm Bay held a referendum on the question of increasing ad valorem taxes to issue general obligation bonds in the amount of $6,000,000 for the financing, acquisition and construction of a sports complex. The following language appeared on the ballot:
 REFERENDUM: WHETHER TO ISSUE BONDS TO CONSTRUCT A SPORTS COMPLEX.
 Shall the City of Palm Bay be authorized to levy ad valorem taxes on all taxable property at a rate not exceeding one mill, for not in excess of seven years and to issue not exceeding $6,000,000 principal amount of general obligation bonds bearing interest at the maximum legal rate at time of sale and payable from such ad valorem taxes for financing acquisition and construction of a sports complex?
I will assume for purposes of this opinion that the referendum passed. Your inquiry is whether, based upon the language of the referendum, the City of Palm Bay is permitted to utilize any excess funds generated by the one mill tax levy on any project other than "for financing acquisition and construction of a sports complex."
Section 12, Art. VII, State Const., authorizes municipalities to issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance:
 (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
 (b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.
And see, s. 166.111, F.S. ("[t]he governing body of every municipality may . . . issue bonds as defined in s. 166.101 from time to time to finance the undertaking of any capital or other project for the purposes permitted by the State Constitution and may pledge the . . . taxing power of the municipality for the payment of such debts and bonds"); s. 166.121, F.S., regarding the issuance of bonds pursuant to Part II, Ch. 166, F.S., by a municipality; s. 166.141, F.S.
The language contained in the referendum question as it was placed on the ballot indicates that the voters considered the levy of an ad valorem tax "for financing acquisition and construction of a sports complex." By way of analogy, it is a general principle of statutory construction that the mention of one thing implies the exclusion of another; expressio unius est exclusio alterius. See, e.g., Thayer v. State, 335 So.2d 815 (Fla. 1976). Cf., AGO 68-76 in which this office concluded that, in the case of a special act levying a recreational tax, effective only after approval by the voters in a county-wide referendum, that "expenditure of the moneys realized from the tax imposition is limited to those purposes expressly enumerated in the act, of which the voters were expressly aware at the time of their approval vote in the referendum election." As the Florida Supreme Court stated in Oven v. Ausley, 143 So. 588, 589 (Fla. 1932), "it is a violation of an elemental principle in the administration of public funds for those who are charged with the trust of their proper expenditure not to apply such funds to the purposes for which they are raised. When funds are raised by taxation for one purpose they cannot be diverted to some other purpose without legislative authority." See also, Supreme Forest Woodmen Circle v. Hobe Sound Co.,189 So. 249, 250 (Fla. 1939); Chamberlain v. City of Tampa, 23 So. 572, 574
(Fla. 1898); AGO's 83-44, 82-54.
In the case of Oven v. Ausley, supra, the Board of County Commissioners of Leon County adopted a resolution providing for the issuance of bonds, proceeds from the sale of which were to be expended on the construction and repair of certain designated roads. A surplus was realized from the sale of these bonds after the designated projects were completed and, by special act of the Legislature, the county commission was authorized to expend the balance from this fund to construct another road. Suit was filed by a taxpayer of the county alleging, among other things, "that the money raised by the exercise of the county's power of assuming an indebtedness which is payable only by taxation of the people's property cannot be lawfully applied to a purpose different from that for which the indebtedness was placed." 143 So. at 589. In determining that a restraining order should have been granted to keep the board of county commissioners from expending the balance of these funds for the construction of another road, the Court stated that:
 When an enforced contribution is exacted from the people by the power of taxation, it is for a specific public purpose, and the fund so raised is a trust fund in the hands of the legal custodians of it. There may exist circumstances in which the fund may be diverted to some other lawful purpose than that for which it was raised. Appropriation of public moneys for certain public purposes involves the power of taxation, and when the money is taken from a fund created by the levy of a tax and applied to some other purpose it is equivalent to the levy of a tax for such purpose. The limitation upon the rate of taxation is for the protection of taxpayers and to *2364 secure economy in the expenditure of public moneys.
 It is evident from the allegations of the bill that more money was appropriated for the particular purpose than was necessary. If that surplus may now be taken and applied to another purpose for which no tax was authorized, it is obvious that the law thus evaded affords no protection whatever to taxpayers.
See also, 85 C.J.S. Taxation s. 1057(b), p. 646 (taxes set apart for particular uses by the State Constitution, or levied and collected for particular purposes, cannot ordinarily be legally utilized for, or diverted to, any other purpose.) Cf., Dickinson v. Stone, 251 So.2d 268, 273 (Fla. 1971) ("[u]nless otherwise expressly provided by law, appropriated money should be expended only for the purpose for which they [sic] were appropriated"); AGO's 77-17, 77-26, 77-38. Thus, it would appear that surplus moneys realized from the referendum for a stated purpose cannot be diverted to some other purpose in the absence of another referendum approving such expenditures. Cf., AGO 82-54 suggesting that a county hold another referendum to authorize the expenditure on a pay-as-you-go basis of taxes collected pursuant to s.336.021, F.S., following an associated county referendum which specified a bond issue to immediately fund construction and reconstruction of an adequate roadway system in the county. In light of the above authorities, I am unable to condone the use of the above described funds for any purpose other than as expressly provided in the referendum question presented to and approved by the electors.
Therefore, in the absence of any express authorization contained in the referendum approved by the electorate of the City of Palm Bay for such action, it is my opinion that the City of Palm Bay is not empowered to utilize excess proceeds from a tax levy to finance the acquisition and construction of a sports complex for any other project or municipal purpose.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General