Mr. James G. Sisco St. Johns County Attorney Post Office Box 1533 St. Augustine, Florida 32085-1533
Dear Mr. Sisco:
On behalf of the St. Johns County Board of County Commissioners, you ask substantially the following questions:
1. May revenues from a local government infrastructure surtax be expended on projects that are not described on the ballot to approve imposition of the surtax?
2. May a county, with voter approval at either the same or at different elections, levy two separate 0.5 percent sales surtaxes?
In sum:
1. Section 212.055(2), Florida Statutes, requires that a general description of the projects to be funded by a local government infrastructure surtax must be placed on the ballot to approve the imposition of the surtax. Revenues from the surtax must be expended on projects that fall within the general description contained on the ballot.
2. Section 212.055(2), Florida Statutes, authorizes the governing body in each county to levy a surtax of either 0.5 percent or 1 percent. It does not authorize the imposition of separate surtaxes of 0.5 percent each.
Question One
Florida follows the general rule that taxes may be levied, assessed, and collected only in the manner prescribed by statute.[1] Although a county is granted broad home rule powers by Article VIII, section 1(f), Florida Constitution, as implemented by section 125.01, Florida Statutes, its taxing power is derived from Article VII of the Florida Constitution, not Article VIII, Florida Constitution.[2] Thus, this office has stated that a county or municipality has no home rule powers with respect to the levy of taxes but must be able to point to constitutional or statutory authority in exercising its taxing power.[3]
Section 212.055, Florida Statutes, is a general law authorizing the imposition of discretionary sales surtaxes. Subsection (2) of the statute authorizes counties to levy a local government infrastructure surtax under precisely defined conditions. These conditions prescribe the rates of taxes, the uses for the revenue raised by the taxes, and the procedure to be followed for approving the taxes. Pursuant to section 212.055(2)(a)1., Florida Statutes, the governing authority in each county may levy a discretionary sales surtax of 0.5 percent or 1 percent. The surtax may be levied and imposed pursuant to a county ordinance approved by the electors in a referendum on the surtax; or the governing bodies of the municipalities representing a majority of the county's population may adopt uniform resolutions establishing the rate of the surtax, which must then be approved by a majority of the county electors voting in a referendum.
Proceeds of the surtax are to be distributed to the county and the municipalities within such county in which the surtax was collected according to an interlocal agreement, or if there is no such agreement, according to the formula provided in section218.62, Florida Statutes.[4] The proceeds and any accrued interest are to be used to finance, plan, and construct infrastructure and to acquire land for public recreation or conservation or protection of natural resources and to finance the closure of county-owned or municipally-owned solid waste landfills that are already closed or are required to close by order of the Department of Environmental Protection.[5]
Section 212.055(2)(b), Florida Statutes, provides:
"A statement which includes a brief general description of the projects to be funded by the surtax and which conforms to the requirements of s. 101.161 shall be placed on the ballot by the governing authority of any county which enacts an ordinance calling for a referendum on the levy of the surtax or in which the governing bodies of the municipalities representing a majority of the county's population adopt uniform resolutions calling for a referendum on the surtax. . . ."
Thus, the statute requires that a general description of the projects to be funded by the surtax revenues be included on the referendum ballot to approve the imposition of the surtax.
The courts of this state have recognized the general rule that tax revenues must be expended for the purposes for which they were collected, that is, funds raised by taxation for one purpose cannot be diverted to another use.[6] In addition, this office has stated, for example, that moneys collected pursuant to the original ordinance imposing a tourist development tax could only be used to accomplish the purposes set forth in the original plan for tourist development and could not be expended for the purposes set forth in the new ordinance or considered in a new tourist development plan.[7]
In light of the above, section 212.055(2), Florida Statutes, in providing that the ballot must contain a general description of the projects to be funded by the local government infrastructure surtax, would appear to limit the expenditure of revenues from such surtax to those projects described on the ballot.[8] I would note, however, that the statute requires only a general description of the projects to be funded, thus giving local governments some leeway in describing the type of projects to be funded rather than requiring a description of the specific project itself. I am, however, of the opinion that revenues from the local government infrastructure surtax must be expended on projects that fall within that general description contained on the ballot.
Question Two
As discussed in the previous question, a county has no home rule powers with respect to the levy of taxes, but must be able to point to constitutional or statutory authority in exercising its taxing power. Thus, a county may levy, assess or collect taxes only in the manner prescribed by statute.
Section 212.055(2)(a)1., Florida Statutes, provides in pertinent part that "[t]he governing authority in each county may levy a discretionary sales surtax of 0.5 percent or 1 percent." (e.s.) The use of the term "or" in a statute is generally construed to be disjunctive, indicating that alternatives were intended.[9] Thus the statute would appear to authorize the county to adopt an ordinance imposing a local government infrastructure surtax of either 0.5 percent or 1 percent. I find nothing in section212.055(2), Florida Statutes, that would authorize a county to impose multiple local government infrastructure surtaxes, whether approved at the same or different elections, that would be operational at the same time.[10]
While the statute does not contemplate a county's adoption of multiple local government infrastructure surtaxes, a county would not appear to be foreclosed from changing the rate of the surtax by adoption of a new ordinance in accordance with the requirements of the statute. Section 212.054, Florida Statutes, for example, in prescribing the procedures for the administration and collection of the discretionary sales surtaxes authorized in section 212.055, Florida Statutes, recognizes the authority of the governing body of a county to levy, terminate or change the rate of the discretionary sales surtax by requiring the county to notify the Department of Revenue within 10 days of such an imposition, termination or rate change of the surtax.[11]
Accordingly, I am of the opinion that while a county may impose, terminate or change the rate of the local government infrastructure surtax in accordance with the requirements of the statute, section 212.055(2), Florida Statutes, requires that such a surtax be levied at either 0.5 percent or 1 percent and does not authorize multiple levies of 0.5 percent each.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, Walter E. Heller Company Southeast, Inc. v. Williams,450 So.2d 521 (Fla. 3d DCA 1984), review denied, 462 So.2d 1108
(Fla. 1985); State ex rel. Seaboard Air Line R. Co. v. Gay,35 So.2d 403 (Fla. 1948); Maas Brothers, Inc. v. Dickinson,195 So.2d 193 (Fla. 1967).
[2] See generally, Contractors and Builders Association ofPinellas County v. City of Dunedin, 329 So.2d 314, 317 (Fla. 1976). See also, City of Tampa v. Birdsong Motors, Inc.,261 So.2d 1 (Fla. 1972) (municipality's power to tax is subject to the restrictions in Art. VII, s. 9, Fla. Const.).
[3] See, e.g., Ops. Att'y Gen. Fla. 90-23 (1990) (city may not provide for the rebate of ad valorem taxes collected on newly annexed property, in the absence of constitutional or statutory authority allowing such action); 87-45 (1987); and 84-65 (1984) (units of local government have no inherent power to impose taxes; the taxing power must be derived from the state).
[4] Section 212.055(2)(c), Fla. Stat. The interlocal agreement may include a school district with the consent of the county governing authority and the governing bodies of the municipalities representing a majority of the county's municipal population.
[5] Section 212.055(2)(d)1., Fla. Stat. And see, s.212.055(2)(e), Fla. Stat., authorizing school districts, counties and municipalities receiving proceeds under this subsection to pledge such proceeds for the purpose of serving new bond indebtedness incurred pursuant to law.
[6] See, Supreme Forest Woodmen Circle v. Hobe Sound Company,138 Fla. 141, 189 So. 249 (1939); Dickinson v. Stone,251 So.2d 268, 273-274 (Fla. 1971) (it is a violation of an elemental principle in the administration of public funds for one who is charged with the trust of their proper expenditure not to apply those funds to the purposes for which they are raised). And see,Oven v. Ausley, 106 Fla. 455, 143 So. 588 (1932); Taylor v.Williams, 142 Fla. 756, 196 So. 214 (Fla. 1940).
[7] Attorney General Opinion 96-26 (1996). And see, Ops. Att'y Gen. Fla. 86-39 (1986) and 82-54 (1982) and 77-26 (1977). Seealso, 85 C.J.S. Taxation s. 1057(b), p. 646 (taxes levied and collected for particular purposes, cannot ordinarily be legally utilized for, or diverted to, any other purpose).
[8] Compare, s. 212.055(2)(g), Fla. Stat., authorizing counties with populations of 50,000 or less on April 1, 1992 or any county designated as an area of critical state concern on the effective date of the act that imposed the surtax before July 1, 1992, to use the proceeds and interest for any public purpose provided certain conditions are met, including the amendment to the surtax ordinance.
[9] See, Sparkman v. McClure, 498 So.2d 892 (Fla. 1986); D.M.v. State, 712 So.2d 1204 (Fla. 5th DCA 1998); Fort Walton BeachMedical Center, Inc. v. Dingler, 697 So.2d 575 (Fla. 1st DCA 1997).
[10] Compare, ss. 212.055(3), (4), (5), and (6), Fla. Stat., respectively providing for a small county surtax, an indigent care surtax, a county public hospital surtax, and a school capital outlay surtax. And see, s. 212.055(2)(i), Fla. Stat., stating that `[n]otwithstanding any other provision of this section, a county shall not levy local option sales surtaxes authorized in this subsection and subsections (3), (4), (5), and (6) in excess of a combined rate of 1 percent."
[11] Section 212.054(7)(a), Fla. Stat. Such notification must not be later than November 16 prior to the effective date. Andsee, s. 212.054(7)(b), Fla. Stat. See also, s. 212.054(5), Fla. Stat., stating that no discretionary sales surtax or increase or decrease in the rate of any discretionary sales surtax shall take effect on a date other than January 1 nor terminate on a day other than December 31.