The Honorable Marc A. Cianca Chief Judge, Nineteenth Judicial Circuit St. Lucie County Courthouse 315 Courthouse Addition 218 South Second Street Fort Pierce, Florida 34950
Dear Judge Cianca:
As Chief Judge of the Nineteenth Judicial Circuit of Florida, you ask the following question:
Does the chief judge have the authority or discretion to use funds generated from filing fees designated solely for mediation or alternative dispute resolutions for the purpose of hiring a part-time general master to conduct judicial reviews on juvenile dependency issues?
In sum:
Funds generated from filing fees designated solely for mediation or alternative dispute resolutions may be used only for those purposes, and therefore, such funds may not be used for the purpose of hiring a part-time general master to conduct judicial reviews on juvenile dependency issues.
You state that as chief judge you are charged with the administration of the circuit so that cases are disposed of promptly. According to your letter, a dependency court general master would be able to assist the judiciary in the prompt disposition of juvenile dependency cases and to conserve judicial resources. Such a general master would conduct the regularly required judicial reviews to determine if a parent is in compliance with a court-ordered case plan.
Under the Rules of Family Law, circuit court judges are permitted to appoint general masters to assist the court.[1] It is necessary, however, to identify funding for these positions. You state that there are monies available in the mediation/ alternative dispute resolution account established pursuant to section 44.108, Florida Statutes. The question raised is whether monies in this account may be used to fund the salary of a part- time general master to conduct judicial reviews on juvenile dependency cases.
The Nineteenth Judicial Circuit has implemented a mediation program pursuant to section 44.108, Florida Statutes. The statute recognizes that mediation should be accessible to all parties regardless of financial status. It provides for each board of county commissioners to support mediation and arbitration services by appropriating moneys from county revenues and by:
"(1) Levying, in addition to other service charges levied by law, a service charge of no more than $5 on any circuit court proceeding, which shall be deposited in the court's mediation-arbitration account fund under the supervision of the chief judge of the circuit in which the county is located; and
(2) Levying, in addition to other service charges levied by law, a service charge of no more than $5 on any county court proceeding, which shall be deposited in the county's mediation-arbitration account fund to be used to fund county civil mediation services under the supervision of the chief judge of the circuit in which the county is located.
(3) Levying, in addition to other service charges levied by law, a service charge of no more than $45 on any petition for a modification of a final judgment of dissolution, which shall be deposited in the court's family mediation account fund to be used to fund family mediation services under the supervision of the chief judge of the circuit in which the county is located."[2]
You have supplied this office with a copy of Saint Lucie County Ordinance Number 90-39, which imposes the additional service charges and provides that the costs collected for mediation-arbitration services shall be deposited in the mediation-arbitration account funds. Such funds are to be used for circuit civil mediation-arbitration services, county civil mediation-arbitration services and family mediation-arbitration services under the supervision of the chief judge.
In Attorney General Opinion 01-40, this office considered whether funds received from the $3 court cost assessed pursuant to section 938.19, Florida Statutes, for the operation and administration of a teen court, could be applied to other programs or go into the county's general revenue fund. In concluding that the assessment could not be applied to other programs or go into the general revenue fund, this office relied on the Supreme Court's decision in Dickinson v. Stone,[3] in which the Court held, "[i]t is a violation of an elemental principle in the administration of public funds for one who is charged with the trust of their proper expenditure not to apply those funds to the purposes for which they are raised."
In addition, this office recognized the principle of statutory construction that when the controlling law directs how a thing is to be done, that is, in effect, a prohibition against its being done in any other way.[4] Thus, this office concluded that section 938.19, Florida Statutes, requires that funds received from the $3 assessment be deposited into an account specifically for the operation and administration of the teen court and does not authorize application of the funds to other programs or to the county's general revenue fund.
Similarly, section 44.108, Florida Statutes, recognizes that the service charges authorized thereunder are to be used to fund mediation and arbitration services. Nothing in the statute authorizes or recognized that the funds may be used for other purposes. While funding the position of a general master to conduct required reviews to determine if a parent is in compliance with the court-ordered case plan may well provide an effective and efficient manner of providing such reviews and conserve judicial resources, it does not fall within the authorized uses of the funds collected pursuant to section 44.108.
Accordingly, I am of the opinion that funds generated from filing fees designated solely for mediation or alternative dispute resolutions may be used only for those purposes. Thus, such funds may not be used for the purpose of hiring a part-time general master to conduct judicial reviews on juvenile dependency issues.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Family Law Rules of Procedure, Fla. Rules of Court (2001), Rule 12.490(a) providing in part that "[j]udges of the circuit court may appoint as many general masters from among the members of The Florida Bar in the circuit as the judges find necessary, and the general masters shall continue in office until removed by the court."
[2] If a board of county commissioners levies the service charge set forth in s. 44.108(1), (2) or (3), s. 44.108(4), Fla. Stat., requires the clerk of the court to forward $1 of each charge to the Office of the State Courts Administrator which shall deposit the funds in a state mediation and arbitration trust fund to be used by the Supreme Court to carry out its responsibilities set forth in s. 44.106, Fla. Stat.
[3] 251 So.2d 268, 273 (Fla. 1971) (unless otherwise expressly provided by law, appropriated money must be expended only for the purpose for which it was appropriated). And see, Taylor v. Williams, 196 So. 214
(Fla. 1940); Supreme Forest Woodmen Circle v. Hobe Sound Co., 189 So. 249
(Fla. 1939) (funds raised by taxation for one purpose cannot be diverted to another without legislative authority and it is a violation of official duty in handling public funds for those charged by law with the lawful payment thereof to divert the funds to a purpose contrary to that for which they were raised); Oven v. Ausley, 143 So. 588 (Fla. 1932).
[4] See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Thayer v.State, 335 So.2d 815, 817 (Fla. 1976) (a legislative direction as to how a thing is to be done is, in effect, a prohibition against its being done in any other way). And see, Ops. Att'y Gen. Fla. 00-37 (2000) (expenditure of funds strictly limited to those purposes and projects recognized by the statute), and 00-25 (2000) (specific enumeration in statute of those projects for which tourist development tax revenues may be spent implies the exclusion of others).