270 So.2d 707 (1972)
Jerry THOMAS et al., Appellants,
v.
Reubin O'D. ASKEW et al., Appellees.
No. 42909.
Supreme Court of Florida.
December 6, 1972.
Rehearing Denied January 17, 1973.
Mark R. Hawes, St. Petersburg, for appellants.
Robert L. Shevin, Atty. Gen., and John P. Ingle, III, Asst. Atty. Gen., Arnold L. Greenfield and Robert E. Niro, Tallahassee, Dept. of General Services, for appellees.
*708 Kenneth E. Easley, Clearwater, for Save Our Capitol, Inc., as amicus curiae.
PER CURIAM.
Appellants filed suit in the Leon County Circuit Court against Appellees as Head of the Department of General Services of the State of Florida in an attempt to halt construction of the twenty-five million dollar state capitol complex building. The trial court granted Appellees' motion to dismiss for failure to state a cause of action; Appellants appealed that decision to this Court and raised the following issues:
I. Whether the construction of a new capitol and demolition of the existing building is unauthorized and in violation of Sections 272.122, 272.124 and 272.126, Florida Statutes;
II. Whether Chapter 72-409(4)(25), Laws of Florida 1972, an item of the 1972 General Appropriations Act providing $25,000,000 from the General Revenue Fund for the Florida State Capitol Complex, is an unconstitutional inclusion of substantive law in an appropriations act; and,
III. Whether the title to Chapter 72-409, Laws of Florida 1972, is constitutionally defective for failure to put interested persons on notice of its authorization of a new capitol.
The Statutes relied upon by Appellants provide in pertinent part as follows:
"272.122 Acquisition of land for state buildings and facilities in the Capitol Center.  The division of building construction and maintenance of the department of general services is hereby authorized and directed to acquire both land and buildings now needed or to be needed for use in whole, or in part, by state government ... However, no building can be constructed nor land acquired under this section without specific legislative approval. The acquisition of the land, buildings and facilities may be financed by grants, direct appropriations or by the issuance of revenue bonds or certificates ..."
"272.124 Division of building construction and maintenance; power to contract.  The division of building construction and maintenance of the department of general services is authorized and empowered to make and enter into any contract or agreement, with any person or agency, public or private, to lease, buy, acquire, construct, hold or dispose of real and personal property necessary to carry out the objects and purposes of this act; provided however no contract may be entered into without specific authorization of the Legislature for the project."
"272.126 Reconstruction of center section of capitol, parking facilities in legislative building, maximum cost of construction.  Any provision of this act to the contrary notwithstanding the division of building construction and maintenance of the department of general services is authorized to reconstruct the center section of the capitol building and to acquire land and construct a new legislative building to include parking facilities. The total amount for such construction shall not exceed ten million dollars."
It is the Appellants' contention that the requirement in Sections 272.122 and 272.124 of specific legislative authorization for construction within the capitol center means that a statute, separate from the General Appropriations Act, specifically authorizing construction of a new state capitol must be enacted before construction of such building can commence. That is not the intention of these Sections.
Sections 272.122, 272.124 and 272.126 were the result of enactments of the legislature in earlier sessions in the years 1965, 1967, 1969 and 1971, prior to the enactment of the 1972 General Appropriations *709 Act. Such enactments cannot restrict subsequent legislative general appropriations. Only limiting provisions of the State Constitution (hereinafter discussed) can have restrictive effects on the legislative power to appropriate.
The capitol center in Tallahassee, Florida, is filled with buildings constructed without benefit of specific statutory authorization. The authorization requirement of Chapter 272 historically has been met by the specific inclusion in a general appropriation act of the monies necessary for the construction of the specified building. That was done in this case.
Chapter 72-409(4)(25), Laws of Florida 1972, the General Appropriations Act, provides:
"Section 4. The monies in the following items are appropriated from the named funds to the Department of General Services for the named agencies for capital outlay  buildings and improvements for the 1972-73 fiscal year as listed herein; provided, however, that no contract shall be entered into or any of the funds encumbered in any manner without the approval and consent of the Department of General Services. * * *
Provided, however, no expenditure shall be made under Items 14, 25, and 28 prior to the establishment of a capitol center planning district.
* * * * * *

 "Item Amount
 $
 GENERAL SERVICES,
 DEPARTMENT OF
 25. Florida State Capitol
 Complex
 From General Revenue
 Fund .................. 25,000,000"

It is clear that the Legislature, in enacting this item of the Appropriations Act, intended and directed that the Department of General Services should be the administrative body to let the necessary contracts and supervise the planning and construction details incident to the state capitol complex building project. All items of appropriation of necessity refer to the official, agency, recipient, or purpose contemplated to use, receive, or expend the funds. None is appropriated in a vacuum. Furthermore, in appropriating twenty-five million dollars for the new capitol building, the Legislature expressly superseded Section 272.126's earlier requirement that the legislative wings be built and the present capitol be reconstructed for no more than ten million dollars.
Appellants' contention that the construction of a new capitol building is in conflict with Chapter 272, Florida Statutes, F.S.A., therefore, has no merit because, as noted, prior statutes cannot tie the hands of succeeding legislatures acting within their constitutional powers.
The trial court must be affirmed unless we find that the inclusion of the twenty-five million dollar capitol appropriation in Chapter 72-409 violates some constitutional limitation, i.e., in this case either Article III, Section 6, or Article III, Section 12, of the Florida Constitution, F.S.A., as Appellants contend.
Those sections provide in pertinent part as follows:
"Section 6. Laws.  Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title...."
"Section 12. Appropriation bills.  Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject."
Their purposes are:
"First, to prevent hodgepodge or logrolling legislation;
"Second, to prevent surprise or fraud upon the Legislature by means of including a provision in a bill of which the title gives no intimation and which might *710 therefore be overlooked and carelessly and unintentionally adopted; and
"Third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the suggestions of legislation that are being considered, in order that they may have opportunity of being heard thereon, if they shall so desire." Dickinson v. Stone, Fla. 1971, 251 So.2d 268, 272.
In contending Chapter 72-409(4)(25) violates Article III, Section 12, by including substantive law in an appropriations act, Appellants rely upon our decision in Dickinson v. Stone, supra. There, we held that portion of the 1971 General Appropriations Act, which provided for the transfer of personnel and data processing equipment from the Comptroller to the Department of General Services (Section 2, Chapter 71-357, Laws of Florida 1971), was in violation of the above constitutional provisions.
The section which contained an appropriation to the Carlton Data Center stated:
"It is the intent of the legislature that the electronic data processing division of the department of general services shall assume complete control and supervision of the designated data centers in this section, including accounting, purchasing, personnel and other administrative services for the purpose of providing adequate data processing services to the various users of these centers. Further, the electronic data processing division of the department of general services is directed to provide programming and coordination, to the end that all centers function efficiently and economically and render all possible service to the state departments and agencies serviced."
We found that the above provision violated Article III, Section 12, Florida Constitution, because it constituted an attempt in express language to amend substantive law by a provision in an appropriations act transferring duties, property, and personnel from one executive department to another. This transfer was not, we felt, "so relevant to, interwoven with, and interdependent upon the appropriation of funds for the operation of the Carlton Data Center so as to justify ... its inclusion within the General Appropriations Act." Dickinson v. Stone, supra, at 251 So.2d 268.
The item in the 1972 General Appropriations Act providing twenty-five million dollars for construction of the new capitol, however, deals solely with an appropriation for the purpose stated without more. It is not logrolling legislation; it is nothing other than an often-used line-item appropriation of funds for a state building purpose. That is exactly what an appropriation act is traditionally supposed to do. In Lee v. Dowda, 1944, 155 Fla. 68, 19 So.2d 570, 571, we said:
"It is manifest that the Constitution considered this matter of appropriation laws so important that it required they should be freed from all log rolling, by putting into such bills riders dealing with any other subject whatsoever, so that the attention of the Legislature should be concentrated upon the wisdom of and the necessity for the several items of appropriations made by and enumerated in the bill, and so also that the public could rest assured that when an appropriation bill was up for consideration in the Legislature nothing would be considered but the appropriations, and that this important matter should not be prejudiced by the injection into the appropriation bill of any other matters, regardless of their inherent merits or demerits." (Emphasis supplied.)
Chapter 72-409(4)(25), Laws of Florida 1972, a state capitol appropriation, meets this test. It carries no riders; nor any other language of a substantive nature which would be improper in a general appropriations act or to be valid would have to be the subject of a separate enactment.
Appellants in adverting to earlier enacted Sections 272.122, 272.124, 272.126, make no case against the validity of the subsequent *711 line-item state building appropriation. Those sections are no impediment to the appropriation power of a subsequent Legislature.
Furthermore, an appropriation line item standing alone cannot by implication be raised to the status of a written rider or substantive inclusion of other independent, ungermane matter in a general appropriations act. The line item here is a direct appropriation for a capitol building.
If the Legislature should be precluded from making a line item appropriation on the theory the item appropriation in itself is the equivalent of a provision on another subject contrary to Article III, Section 12, great uncertainty and confusion would result. The Legislature would be frustrated in great measure in constitutionally discharging its duty of making annual appropriations. For example, under Appellants' theory if the usual amount of prior appropriations for a state function were cut in half, it could be contended the cut was invalid because it had the "other" effect of eliminating services theretofore provided.
It has never been seriously contended that a new building, a new state service or function, or a new state program could not have its genesis in a line item appropriation. The prohibition of Article III, Section 12 has only been applied to substantive other matters wholly independent of or unconnected with an appropriated item which matters were improperly but expressly written into the general appropriations act. Implied or secondary results from the operation of a line item appropriation have never been raised to the equivalent status of an ungermane written rider improperly inserted into an appropriations act.
Finally, we must determine whether the title to Chapter 72-409 is defective under Article III, Section 6, Florida Constitution, because it does not put the public on notice of its authorization of a new capitol. The title reads as follows:
"An Act making appropriations; providing moneys for the annual period beginning July 1, 1972, and ending June 30, 1973, to pay salaries, other expenses, capital outlay  buildings and improvements, and for other specified purposes of the various agencies of state government... ." (Emphasis supplied.)
In King Kole, Inc. v. Bryant, Fla. 1965, 178 So.2d 2, 4, we discussed the specificity needed in a title. In that case, we said:
"The Legislature is allowed a wide latitude in the enactment of laws, and the courts will strike down a title only when there is a plain case of violating or ignoring the constitutional requirement. [citations omitted] The title is sufficient if it fairly gives such notice as will reasonably lead to inquiry into the body thereof. [citations omitted] The title need not be an index to the contents. It is not necessary that it delineate in detail the substance of the statute. [citations omitted]"
The title to Chapter 72-409, Laws of Florida 1972, clearly gives adequate notice of the capitol appropriation. By saying that it provides money for "capital outlays  buildings and improvements" it indicates that it contains appropriations for the construction of new state buildings. It does not need to specifically name each new building in the title or elaborate the details incident to the plannning or construction involved. We judicially know that many state buildings have been constructed pursuant only to line-item appropriations in the general appropriations acts.
Because we find that the new capitol appropriation in Chapter 72-409, Laws of Florida 1972, does not violate Sections 6 and 12 of Article III, Florida Constitution, we affirm the trial court.
The State, through the Attorney General, has officially advised us there is no present intention on the part of Appellees to use any part of the appropriation sub *712 judice to raze or destroy the present Capitol Complex and has conceded that legislation providing such funds for that purpose would be necessary.
Comment was made during oral argument calling attention for the first time to House Concurrent Resolution Number 4, Regular Legislative Session in A.D. 1951, providing for the area between the Capitol and Supreme Court Buildings to be set apart, maintained, developed and preserved as a public park dedicated to the memory of the late Curtis L. Waller.
In this case, we are reviewing the judgment of a trial court and there is nothing in the record to show the location of the proposed new structure and, furthermore, that question was not determined by the trial court. Our review here is limited to a review of the record before us and it would be premature to discuss the effect, if any, of the Waller Park resolution.
This leaves as the only material question involved in this case the validity vel non of the $25,000,000 appropriation for a Florida State Capitol Complex. For the reasons stated above, we think the appropriation identified as Item 25 of the 1972 General Appropriations Act is a clear and complete and valid enactment and, subject to the dictum hereinabove mentioned, the judgment under review is,
Affirmed.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS and McCAIN, JJ., concur.
SPECTOR, District Court Judge, concurs specially with opinion.
DEKLE, J., dissents with opinion.
SPECTOR, Justice (specially concurring).
I agree with the conclusion and judgment of the majority that the tenor of the appropriation item in question is sufficient to authorize construction of a new capitol complex. This conclusion is readily supportable when viewed in light of the historical genesis of the many state buildings in the capitol center which came into being as a result of similar appropriations made by prior legislatures. Nor am I troubled by the use of the phrase "capitol complex" found in the appropriations bill. It simply authorizes the executive branch to provide for the construction of a new capitol consisting of two or more integrated parts such as the main capitol building and adjoining plazas, parks and parking facilities.
I am troubled, however, by the point raised in Mr. Justice Dekle's dissenting opinion concerning the destruction of Waller Park. Were it not for the assurance made by the Attorney General in behalf of the appellees in his supplemental brief filed subsequent to oral argument to the effect that the contemplated encroachment is not substantial, I would be compelled to lend Justice Dekle a "helping voice". However, upon appellee's representation that there will not be a substantial encroachment into the park, that is, beyond the present westerly curb of the area used for parking at the base of the horseshoe [an encroachment into the park's integrity already accomplished without objection], it is unnecessary at this time to give further consideration to the Waller Park issue. If appellees do not honor their attorney's representation regarding the extent of the encroachment into the park, the courts will be available to grant such redress as may be appropriate upon the suit of a proper party.
DEKLE, Justice (dissenting):
The "line item appropriation" sanctioned in the majority opinion as sufficient for construction of a new Florida State Capitol building does not in fact provide the assumed *713 "line item appropriation" for a new capitol building. It is as follows:

 "Item Amount
 $
 GENERAL SERVICES,
 DEPARTMENT OF
 25. Florida State Capitol
 Complex
 From General Revenue
 Fund ...................... 25,000,000"

 (Emphasis added)
(Ch. 72-409(4)(25) Laws of Florida 1972)
Contrary to popular assumption, which has apparently been motivated by the rush to construct a new capitol building, it has been overlooked that the express appropriation is for the "Capitol Complex". This may include a capitol building; it may just as well include any number of other expenditures which may or may not be buildings within the designated central area of our capital city designated as the "Capitol Complex," encompassing the several buildings, parks and other areas of the existing and projected complex in a continuing scheme for a unified and beautiful capitol area. The funds, for example, could simply be used for an appropriate executive tower but nowhere is it set forth that the funds are specifically for a capitol structure.
I could not, therefore, concur in the approval of this vague wording as a clear designation for a new "capitol building", which is apparently intended to replace the present historical structure as our capitol.
The admission before the bar of this Court in the State's oral arguments and in its briefs is that our state government is nevertheless proceeding toward construction of a new capitol (building) and intends to encroach upon a legislatively created public park contrary to law. It is in fact doing so. This is a shocking disregard for the law by our state government without a suggestion of legislative authority or even an application to that body or any court for approval. This is in clear violation of House Concurrent Resolution No. 4, approved by the Governor on April 25, 1951,[1] which expressly created Waller Park, lying between the present Capitol and the Florida Supreme Court Building. The law directs this very government to "preserve" Waller Park. Instead, our executive branch proceeds to destroy the people's park contrary to law, while prodding their approval of $ millions in bonds for other state parks as recreational areas. It is small wonder that we find the credibility gap in government widening in the face of such arrogant action, when an individual citizen would be hailed into court for so much as littering the same park with his lunch wrapper. Such obvious inconsistency lends a hollow ring to the demands of the same government for "law and order" when it does not show the same respect which it demands.
It has further been asserted by the Attorney General on behalf of the State of Florida and its Cabinet that "no part of this $25 million will be expended to raze any portion of the existing capitol structure." It was earlier represented at the bar of this Court upon preliminary motions in this cause that "No part of the present Capitol Building will be destroyed." It is of course obvious that unless either a portion of Waller Park is utilized or at least a part of the present Capitol is taken down, that the presently contemplated "high rise" Capitol can hardly be constructed in its anticipated location at the west of the present capitol building because the only remaining land in that area is 50' Adams Street itself. The principle of physics still prevails that *714 only one object can occupy the same space at any one time.
I am quite aware that this is not an express central issue in the present cause before us. Neither do I know whether another suit to enjoin the encroachment or building has been filed. It is, however, a related fact essential to the issue which we do consider. I cannot lend my approval to such disregard and disrespect for the legislative and judicial processes, nor to the dishonor of a distinguished native son, the Honorable Curtis L. Waller, former United States Court of Appeals Judge, to whose memory the park was so glowingly dedicated by said resolution and whose marker even now rests in the disarray of the rape of that once beautiful park which is already in progress with removal of plants and the stripping of all grass sod from the park, substituting instead the laying of pipes within it and encroachment of a new capitol building upon it.
The same government, and again without the issue being expressly raised, completely obliterated the R.A. (Bob) Gray Park,[2] by covering it with the new Senate Office Building now nearing completion adjoining the south side of the present Capitol. Again, no one brought the direct issue before the legislature or the courts. It was simply ignored.
Edmund Burke once said: "All that is necessary for the triumph of evil in the world is that enough good men do nothing." No voice was raised and the executive branch proceeded with audacious impunity and without so much as even asking authority for the vacation of Bob Gray Park. It moved in utter disregard for the law creating the park, and without concern for legal requirements for changing it, simply proceeded to obliterate the park with a building.
Someone recently remarked, "The trouble with the world today is apathy  but then, who cares!"
Encouraged in its success without resistance in consuming R.A. Gray Park, the juggernaut of self-propelled government thus gains momentum without concern for the governed. Perhaps the "sleeping giant" of the governed may yet awaken. May God preserve us if it does not.
NOTES
[1] "[T]here is hereby set apart as a public park, and dedicated to the memory of Curtis L. Waller, the area between the Capital and the Supreme Court Building in Tallahassee, Florida, the same hereafter to be maintained, developed, and preserved by the State of Florida as a public park and to bear the name of him who honored Florida and whom Florida delights to honor, the `Curtis L. Waller Park'." House Concurrent Resolution No. 4, approved by the Governor April 25, 1951, Laws of Florida.
[2] Former long-time Secretary of State R.A. Gray. House Concurrent Resolution No. 5, approved by the Governor April 25, 1951.