QUESTIONS: 1. Is the language of the 1975 General Appropriations Act (Ch. 75-280, Laws of Florida) below in conflict with Part II, Ch. 447, F.S., or does it simply limit the scope of collective bargaining for the fiscal year 1975-1976? 2. Is it contestable that such limitation, being proviso language, might not fall under the weight of the collective bargaining process under the 1974 Collective Bargaining Act? 3. Might not the proviso language itself be considered excessively statutory in light of previous court decisions on the subject of statutory language in an appropriations act?
SUMMARY: The proviso made by the 1975 Appropriations Act (Ch. 75280, Laws of Florida) to the appropriation of state funds to the Division of Community Colleges of the Department of Education, which prohibits the use of the appropriated funds for employees' merit raises or salary adjustments, does not violate Art. III, s. 12, State Const., providing that a general appropriations act shall contain provisions on no other subject; nor does it conflict with Art. I, s. 6, id., or Part II, Ch. 447, F.S., relating to the right of public employees to bargain collectively. The proviso you question reads as follows: Provided, however, that no employee shall receive a merit increase or any other salary adjustment except in the case of a promotion; provided, however, that the Department of Administration may approve salary adjustments upon request of the Department of Education under emergency circumstances. Under the Florida Constitution, a general appropriations act "shall contain provisions on no other subject." Article III, s. 12. See Department of Administration v. Horne,269 So.2d 659 (Fla. 1972), stating that Actual modifications of existing statutes or new provisions which are plainly substantive in nature and upon a subject other than appropriations are in violation of Fla. Const. Art. III, s. 12. . . . This prevents such issues from being fairly debated and voted upon separately and, in some instances, avoids the authority line veto of the Governor, thus accomplishing indirectly what could not be done directly. Accord: In re Opinion to the Governor, 239 So.2d 1, 9 (Fla. 1970), in which the court stated that the Legislature may not validly draft a general appropriations bill so as to "unduly and unreasonably preclude the exercise of the executive power to `veto any specific appropriation in a general appropriation bill.' " However, it has long been settled that "reasonable and related conditions upon the same subject may be placed upon expenditures in an appropriations bill." Department of Administration v. Horne, supra, 269 So.2d at 661. And the 1968 Florida Constitution expressly recognizes the power of the Legislature to make appropriations subject to qualifications and restrictions. See Art. III, s. 8 relating to the Governor's power of veto, and providing that the Governor "may veto any specific appropriation in a general appropriation bill, but may not veto any qualification or restriction without also vetoing the appropriation to which it relates." See also In re Opinion to the Governor, supra, 239 So.2d at 10, noting such express recognition by the Constitution and stating further that: Such qualifications and restrictions may not go to the extent of changing other substantive law, but they may limit or qualify the use to which the moneys appropriated may be put and may specify reasonable conditions precedent to their use, even though this may leave some governmental activities underfinanced in the opinion of officers of other departments of government. Accord: Thomas v. Askew,270 So.2d 707, 711 (Fla. 1973), noting that The prohibition of Article III, Section 12, has only been applied to substantive other matters wholly independent of or unconnected with an appropriated item which matters were improperly but expressly written into the general appropriations act. Implied or secondary results from the operation of a line item appropriation have never been raised to the equivalent status of an ungermane written rider improperly inserted into an appropriations act. The proviso here in question is not "wholly independent of or unconnected with" an appropriated item; it is simply a limitation upon the use of the public funds of this state which the Legislature in its wisdom and sole discretion (subject, of course, to any constitutional mandates or restrictions) may deem expedient. See State ex rel. Kurz v. Lee,163 So. 859 (Fla. 1935), stating that, under Art. IX, s. 4, State Const. 1885 (Art. VII, s. 1[c], State Const. 1968), the Legislature has the exclusive power of deciding how, when, and for what purpose state funds shall be applied in carrying on state government, except where the Constitution controls to the contrary. And I know of no constitutional or statutory provision which specifically requires merit increases to be granted to the affected employees — or to any state employees, for that matter — regardless of the availability of duly appropriated funds for such purposes or restrictions upon legislative appropriations of the state's money, or that purports to make any continuing appropriation for that purpose. The constitutional and statutory provisions relating to collective bargaining by public employees do not require a different conclusion. Article I, s. 6, State Const., provides: The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike. This provision grants to public employees the same right of collective bargaining as is granted to private employees, except for the right to strike. Dade County Classroom Teachers Ass'n, Inc. v. Legislature, 269 So.2d 684 (Fla. 1972). And implicit in the right to "bargain collectively" is the right to bargain for higher wages. See also s. 447.309, F.S. (1974 Supp.), authorizing collective bargaining on behalf of public employees "in the determination of the wages, hours, and terms and conditions of employment of the public employees within the bargaining unit." But the right to bargain collectively granted to public employees by Art. I, s. 6, supra, as implemented by the 1974 Collective Bargaining Act for Public Employees (Part II, Ch. 447, F.S.) is a right entirely separate and distinct from the right of the Legislature — and of a local legislative body — to appropriate funds in such amount as is deemed advisable to meet the demands of public employees for a particular fiscal year; and it is a right that is recognized by the implementing legislation. See s.447.309, F.S. (1974 Supp.), requiring the approval of and an appropriation by the legislative body of the public employer to fund the provisions of the collective bargaining agreement. This section of the act provides also that If less than the requested amount is appropriated, the collective bargaining agreement shall be administered by the chief executive officer on the basis of the amounts appropriated by the legislative body. The failure of the legislative body to appropriate funds sufficient to fund the collective bargaining agreement shall not constitute, nor be evidence of, any unfair labor practice. Thus, there appears to be no conflict between the right of public employees to bargain collectively and the right of the legislative body, as the holder of the purse strings, to fix the priorities in allocating the available revenues for a particular fiscal year. While the board of trustees of a community college is deemed to be the "public employer" with respect to all employees of the community college insofar as collective bargaining is concerned, s. 447.203(2), F.S. (1974 Supp.), the State Legislature is the "legislative body" which appropriates the available state revenues for the support of the current operating programs of the state community colleges, to be "apportioned and distributed to the community college districts of the state on the basis of procedures established by law and regulations of the state board [of education]." Section 230.762, F.S. And, of course, the "legislative body" for the purpose of appropriating state funds to pay the salaries of the employees of the Division of Community Colleges of the Department of Education is the State Legislature. In sum: In light of the well-settled rule that the Legislature may qualify or restrict, by a reasonable and germane condition, a particular appropriation of state funds, and in the absence of any controlling constitutional provision to the contrary, it must be concluded that any impact which the restriction or proviso in question may have upon the collective bargaining activities of the public employees affected thereby is "implied or secondary" and that such restriction does not have the status of an "ungermane written rider improperly inserted into an appropriations act," Thomas v. Askew, supra, 270 So.2d at 711, insofar as the particular appropriation here in question is concerned.