Thomas Brown Executive Director Department of General Services Tallahassee
QUESTIONS:
1. Is a contract between a state agency and a telephone company void and unenforceable insofar as it requires the payment of termination charges when service is terminated prior to the expiration of the contractual period?
2. If question 1 is answered negatively, can termination charges be made from the agency's general funds or must there be a specific line-item entry in the approved budget expressly providing for such charges?
SUMMARY:
To the extent that the requirement in a telephone service contract for payment of `termination charges' in the event of termination of telephone services prior to the end of the contract period is otherwise lawful, a state agency may lawfully contract to pay such charges and they are not invalid by virtue of either s. 216.311, F. S., or s. 1(c), Art. VII, State Const. No. specific line-item entry in either the Legislature's appropriation to the agency or the agency's own budget is required for such payment to be valid.
Your questions appear to have arisen from the following situation. Various state agencies have entered into contracts with various telephone companies for the provision of communicated services. Often, such contracts require the payment of `termination charges' if service is discontinued at the agency's request prior to the expiration of the contract period. I gather from information you have furnished to me that a typical contract provision for such charges provides substantially as the following provision.
 If for any reason the CENTREX System covered by this agreement is disconnected in its entirety, a termination charge in the amount of $1,425,000.00 shall be paid by the customer based on installment cost, plus cost of removal, less salvage value, reduced by 1/60th for each month from the date of installation of the equipment, subject to appropriation of the Florida Legislature.
I further gather that when an agency receives its appropriation from the Legislature for `expenses,' such funds are allocated in the agency's budget among the various expenses necessary to run the office, e.g., `telephone service,' etc. The question has apparently arisen whether the payment of termination charges pursuant to a provision such as that quoted above would violate the requirements of s. 216.311, F. S. That section provides in pertinent part:
216.311 Unauthorized agency contracts in excess of appropriations, prohibited; penalty. —
 (1) No agency of the state government shall contract to spend, or enter into any agreement to spend, any moneys in excess of the amount appropriated to such agency unless specifically authorized by law, and any contract or agreement in violation of this chapter shall be null and void. . . .
 (2) Any person who willfully contracts to spend, or enters into an agreement to spend, any money in excess of the amount appropriated to the agency for whom the contract or agreement is executed is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Specifically, you seek to ascertain whether payment of termination charges violates the quoted statutory provision and, even if such charges can be paid, whether they can be paid only pursuant to a specific line-item entry in the agency's budget or whether they can be paid from the agency's general funds.
Generally, it can be stated that rules of law pertaining to the contracts of a governmental body or agency are no different from those which apply to any other contract. 73 C.J.S. Supp. PublicContracts s. 2. Therefore, it seems clear as a general proposition, that the state and the telephone company are bound by contractual provisions lawfully entered into. It must be assumed, when a contract is written in clear, unambiguous terms, that the language employed represents the intent of the contracting parties and accordingly full effect will be given such terms. Nevertheless, I note that the Constitution and laws of Florida are a part of every contract entered into in Florida. Bd. of Public Instruction v. Bay Harbor Island, 81 So.2d 637 (Fla. 1955); General Development Co. v. Catlin, 139 So.2d 901 (3 D.C.A. Fla., 1962).
Accordingly, the provisions of s. 1(c), Art. VII, State Const., s.216.311, F. S., and similar statutory and constitutional provisions limiting or restricting the entering into contracts by governmental agencies are a part of every such contract entered into in the state even though not expressly made a part thereof.
The purpose of the statute in question and of the constitutional provision quoted is to prevent the expenditure of public moneys without the consent of the people as expressed by their elected representatives in legislative acts. These provisions secure to the Legislature the exclusive power to determine how, when, and for what purpose the public moneys will be spent in running and conducting the affairs of government and the maximum amount that can be spent for a specific purpose. Lainhart v. Catts, 75 So. 47
(Fla. 1917); State ex rel. Davis v. Green, 116 So. 66 (Fla. 1928);see also AGO's 066-90 and 071-28. Such appropriations consist of the setting apart of money out of public revenues for a specific use or purpose, and in such manner that the state's executive officers will have the authority to withdraw and use such money for such specific purpose or object and for no other. State exrel. Kurz v. Lee, 163 So. 859 (Fla. 1935).
Before any expenditures may be made by any executive officers of the government from state funds, there must be a specific appropriation authorizing the expenditure in question. Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied, 237 So.2d 530 (Fla. 1970); AGO's 068-12, 071-28.
Any such officer, in order to incur any obligation against the moneys of the state, must find and point to an appropriate constitutional or statutory authorization. (It was held in Thomas v. Askew, 270 So.2d 707 (Fla. 1972), that such legislative authorization may be contained in the General Appropriations Act.) Section 216.311, F. S., prohibits the officer from spending or agreeing to spend any money in excess of the amount appropriated to such agency.
While the questions you pose concern various state agencies presumably operating under various appropriations items, I assume that each has entered into contracts with the telephone company pursuant to an appropriation for `expenses,' though such appropriations may be broken down in the agency's own budget for various expenses necessary to run the agency, including telephone service. In any event, it appears that the courts have recognized the great difficulty inherent in requiring an appropriation action to specify in minute detail every expenditure authorized and the exact amount that may be spent for each expenditure. It has been said that `the fact that an appropriation measure vests wide discretion in the persons entrusted with the expenditure thereof does not affect its validity.' 25 Fla. Jur. Public Funds s. 18; State v. Lee, 27 So.2d 84, 87 (Fla. 1946). In In re Opinion to the Governor, 239 So.2d 1, 9 (Fla. 1970), it was noted by the Supreme Court that `in the early history of the State, it was customary for such bills to fix in minute detail each authorized expenditure. In later years appropriations to state offices and for state activities have been in large sums and have been more flexible as to how these funds may be expended.' A New York court has stated that `details must not run into absurdities and only those details need be given which are necessary and appropriate to show where and for what the money is to be expended.' Saxton v. Carey, 403 N.Y.S.2d 779 (N.Y.App. 1978).
Hence, while an appropriation must be specific enough so as not to result in an unbridled delegation of legislative power to the executive branch, and must accordingly specify the amount to be spent and the purpose and object for each appropriation, AGO 078-28, minute detail is not required. Applying these principles to the instant fact situation, it would appear that the appropriation for `expenses,' pursuant to which an agency entered into the contract for such services, would at least be sufficient to permit such contract to contain any lawful provisions common to such a contract and reasonably related to its purpose. I gather from your letter that the telephone companies are authorized by the Public Service Commission to require termination charges as a part of their service contracts. Hence, such charges appear to be a lawful provision of such contracts.
As noted previously, when contract terms are clear and unambiguous, it is assumed that they represent the intent of the parties to the contract and they will accordingly be given their plain meaning and effect. I also call your attention to AGO 075-217, in which I stated that the clear language of a contract provision nearly identical to the one of concern here required payment of the termination charge only for termination of the `Centrex System' and did not require or authorize payment for termination of a unit or a piece or pieces of equipment. The same language and accordingly the same conclusion apply in the present contract.
In response to your first question, it is my opinion that a contract between a state agency and a telephone company may lawfully and validly require a termination charge to be paid if service is terminated prior to the end of the initial contract period. The constitutional requirement for an appropriation before public moneys can be expended for any purpose would appear to me to be met in the situation under consideration so long as the contracting for telephone services can fairly be said to be within the agency's appropriation for `expenses' and the contract requires a `termination charge.' This is so regardless of how an appropriation may be broken down into `telephone service' and other specific lawful expenses in the agency's own budget. The requirement of s. 216.311, F. S., would also appear to be met so long as there are sufficient funds in the agency's appropriation for `expenses' to cover the termination. Accordingly, in response to your second question, it is my opinion that a line-item entry in the agency's approved budget for `termination charges' is not required before such charges may be validly paid.
Prepared by: Frank A. Vickory, Assistant Attorney General