394 So.2d 1010 (1981)
DEPARTMENT OF EDUCATION and the State Board of Education, Appellants,
v.
The SCHOOL BOARD OF COLLIER COUNTY, Florida et al., Appellees.
No. 56570.
Supreme Court of Florida.
February 26, 1981.
*1011 James D. Little, Gen. Counsel, State Bd. of Ed., Tallahassee, for appellants.
James H. Siesky, Naples, for appellees.
Larry Levy of Dickinson, Levy & Taylor, Tallahassee, and Louis F. Ray, Jr. and Robert W. Kievit, Pensacola, for Escambia County School Bd., amicus curiae.
Douglas K. Sands, Stuart, for School Bd. of Martin County, amicus curiae.
Talbot D'Alemberte of Steel, Hector & Davis, Miami, and Sharyn L. Smith, House of Representatives, Tallahassee, for Hyatt Brown, amicus curiae.
OVERTON, Justice.
This appeal concerns the constitutionality of a condition in the 1978-79 appropriations bill guaranteeing a minimum increase of 7.25 percent in school funding for all counties except those counties that have a millage value per student of more than twenty percent over the statewide average.[1]
The School Board of Collier County, one of four counties[2] excluded from this 7.25 *1012 percent guaranteed increase, brought this action alleging this appropriation condition was unconstitutional under article III, section 12, of the Florida Constitution on the principal grounds the condition amended and modified the substantive law already in effect and contained in section 236.081(6)(c), Florida Statutes (1977).
This action commenced in a declaratory judgment proceeding, and the circuit court made the following findings in its final judgment:
4. Item 353A within that appropriations bill eliminated minimum level funding for those School Districts whose value of a mill per WFTE exceeded the statewide average of 20% or more.
5. The action taken in paragraph 4 above constitutes a modification of the substantive law expressed in Florida Statute 236.081(6)(c).
6. That portion of Item 353A, 78-401 Laws of Florida which purports to deny minimum level funding to some districts is contrary to the precepts of Art. III Section 12 of the Florida Constitution.

7. Plaintiffs have suffered irreparable injury as a result of Item 353A 78-401 Laws of Florida and will continue to suffer such injury in the future unless this Court takes remedial action.
8. Plaintiffs have a right to minimum funding under the provisions of Florida Statute Section 236.081(6)(c).
.....
10. No allegation has been made regarding the constitutionality of the 7.25% increase in minimum level funding that is stated in the Appropriations Act of 1978.
11. Even if the allegation stated in paragraph 10 had been made, the 7.25% increase is a permissible matter for inclusion in an appropriations act under the doctrine of Thomas v. Askew, 270 So.2d 707 (Fla. 1972).
The trial court then specifically struck from the appropriations bill the following portion of Item 353A: "except that those districts with a value of a mill per WFTE 20% or more over the statewide average value of a mill per WFTE shall not receive such guarantee," and directed the Department of Education to give full force and effect to the remaining portion of Item 353A. The effect of this ruling was to give the benefit of this 7.25 percent increase to the four excluded county school districts which produced the most tax dollars from their assessment of property. Proportionate equality in the distribution of school funds was not relied on by the trial judge and is not an issue in these proceedings.
We disagree with the holding of the trial judge and reverse. For the reasons expressed, we find the 7.25 percent guaranteed increase in funding is a supplement to the statutory formula in existence at the time the appropriations bill was adopted. We recognize that an appropriations bill must not change or amend existing law on subjects, other than appropriations, but that principle is subject to the exception that a general appropriations bill may allocate state funds for an authorized purpose in amounts in addition to those previously allocated or substitute adequate specific appropriations for continuing appropriations. Brown v. Firestone, 382 So.2d 654 (Fla. 1980); Thomas v. Askew, 270 So.2d 707 (Fla. 1972); In re Advisory Opinion to the Governor, 239 So.2d 1 (Fla. 1970).
Section 236.081, Florida Statutes, contains very complicated formulae and variables which are devoted to determining the annual state allocation to each school district. These variables include funds generated locally from real estate property taxes and funds contributed to the local school districts by the state from various revenue sources. To ensure that school districts do not receive less money than they received in the prior budget year, there is a "no loss" or "hold harmless" provision in section 236.081(6)(c), which reads in part as follows: "[N]otwithstanding any of the provisions herein, each district shall be guaranteed a minimum level of funding in the amount and manner prescribed... ." The effect of this provision guarantees a minimum level of funding for the new year, ensuring the district that its allocation will not fall below the level of funding from the previous year. *1013 It acts as an alternative to the allocation formula set forth in prior sections.
The School Board of Collier County contends this "hold harmless" provision was amended by the 7.25 percent guaranteed increase condition in the appropriations bill. We disagree and find the condition was a one-time 7.25 percent guaranteed supplemental increase for all but those four districts which received revenue from property taxes in an amount twenty percent above the average for all districts.
The appellees concede that the legislature, if it desires, may allocate more funds to property poor counties than it does to property rich counties. Their claim of unconstitutionality rests solely on whether the condition modifies an existing statute. The Collier County district and the three other districts did not receive less than they received in the prior budget year, and, in fact, the Collier County district actually recognized a 7.13 percent increase under the statutory formula. All the excluded county school districts were entitled to the funds properly allocated under the provisions of the formula set forth in section 236.081. What they did not receive was the one-time additional 7.25 percent guaranteed increase for the year 1978-79. The "hold harmless" provision of section 236.081(6)(c) does not conflict with the concept of a guaranteed 7.25 percent increase for districts with a logical need as determined by the legislature. This "hold harmless" provision was not amended and in fact was not activated because all districts received an increase over the previous year's funding. Under the present statutory scheme, the legislature cannot reduce in the appropriations bill the amount the four excluded districts would receive as determined by the "hold harmless" provision without amending the substantive statute. That principle, however, does not prohibit the legislature from providing a specific amount of additional money for specifically identified school districts.
The legislature is not required to distribute educational funds to all school districts in an equal mathematical proportion. The legislature may, if it so desires, distribute the state funds on the basis of public educational need. That need is readily apparent in this record. The legislature determined that this guaranteed supplemental increase of 7.25 percent should not apply to districts that had a millage yield per student of twenty percent above the average because those districts had much greater local resources. There is a substantial difference in what a district may produce in school funding from local real property taxes. The average statewide yield of a mill for all counties for 1978-79 was $79. The variance is graphically illustrated by the fact that the Collier County tax roll generates $134 per mill, while the Gadsden County tax roll generates only $18 per mill. This disparity in school funding between rich and poor districts was clearly the reason the legislature decided to provide supplemental money only to those districts which had a value of a mill of less than twenty percent over the statewide average. In our view, the legislature was clearly acting within its constitutional authority in providing these additional educational funds in the appropriations bill.
The amicus, Brown, has contended that this cause is moot because the funds have been distributed in accordance with the appropriations bill as enacted by the legislature for the 1978-79 period. This distribution occurred even though the trial court directed otherwise because the judgment was stayed pending this appeal. In view of the trial court specifically holding the condition unconstitutional, we believe it is necessary to resolve the issue and, consequently, we reject the contention of mootness.
We reverse the holding of the trial court, but since the funds have already been distributed in accordance with the appropriation condition, no further directions are necessary.
It is so ordered.
ENGLAND, ALDERMAN and McDONALD, JJ., concur.
*1014 SUNDBERG, C.J., concurs in result only.
ADKINS, J., dissents with an opinion, with which BOYD, J., concurs.
ADKINS, Justice, dissenting.
I dissent.
Item 353A, chapter 78-401, Laws of Florida, reads, in part, as follows:

 353A GRANTS AND AIDS
 FLORIDA EDUCATION FINANCE PROGRAM
 GRADES K THROUGH 12
 FROM GENERAL REVENUE FUND ........ 974,290,318
 FROM INTEREST STATE SCHOOL TRUST FUND ........ 2,000,000
 FROM PRINCIPAL STATE SCHOOL TRUST FUND ....... 4,000,000
 FROM FEDERAL REVENUE SHARING FUND ............ 70,200,000

The base student allocation is $899.27. The required local effort shall be 6.4 mills on the official final tax roll.
In the allocation of the FEFP each district shall be guaranteed a minimum increase of 7.25% in total potential funding per unweighted FTE for 1978-79 over the total funding available per unweighted FTE in 1977-78, except that those districts with a value of a mill per WFTE 20% or more over the statewide average value of a mill per WFTE shall not receive such guarantee. Total potential funding shall include the 1978-79 state allocation for current operation exclusive of all categorical programs, post-secondary vocational fees and the calculated yield of 8 mills. Total funding available in 1977-78 shall include the 1977-78 allocation for current operation exclusive of all categorical programs, post-secondary fees and the calculated yield of the actual non-voted millage levied in 1977-78. The calculations shall be before prior year adjustments and shall be on the same tax roll used in the other FEFP calculations.
The letters "WFTE" stand for weighted full time equivalent. These terms are defined in section 236.013, Florida Statutes (1977).
The emphasized portion of item 353A, supra, is under attack in this litigation. By general law the legislature has provided for the annual allocation from the Florida Education Finance Program funds to each district for current operations of school and has provided the method by which such application shall be determined. Section 236.081, Florida Statutes (1977).
In all candor, the legislature has utilized a complex and unusual manner to accomplish the purpose of providing "substantial equality" in education among the school districts of Florida. Perfect equality of educational opportunities is not and never will be possible. There are too many variables. There would appear to be any number of much less complicated formulas that would be as efficient as the one utilized in providing substantially equal educational opportunities. Some might even harbor an opinion that other systems would come closer to providing absolute equality, but such an opinion would involve a value judgment.
Article III, section 12, Florida Constitution (1968), provides that laws making appropriations for current expenses of the state "shall contain provisions on no other subject."
The majority opinion recognizes that an appropriations bill must not change or amend existing law on subjects other than appropriations. However, the majority says that the underscored language under attack providing for the 7.25% guaranteed increase in spending is a "supplement to the statutory formula in existence at the time the appropriations bill was adopted." In my opinion, if a general law is "supplemented", it is "amended". The appropriations bill does more than authorize amounts different from those previously allocated, it also provides for a method of allocation which is contrary to that provided in general law.
The Florida Education Finance Program constitutes a cluster of "funding receptacles" *1015 created by general substantive law. The determination of the precise amount of funds allotted to each district by the Florida Education Finance Program is accomplished by the application of an integrated formula composed of a multitude of variables, each one dependent on others within the formula. This interdependence means that the alteration of one variable has repercussions throughout the entire formula. Further, it is a delicately balanced system which does not well tolerate special interests. See section 236.012, 236.014, Florida Statutes (1977).
The legislature could have validly chosen to refuse minimum level funding for all districts in Florida; to reduce minimal level funding for all districts in Florida; to fully fund the minimum level provisions for all districts in Florida; or, to permit some level of minimum level funding for all districts in Florida upon the happening of a condition. The legislature chose none of these valid alternatives. Instead, it chose to alter the general substantive law by eliminating minimum level funding for some districts. The condition imposed was one that did not apply uniformly to the entire appropriation, but only to a portion of it. Yet, the law requires that "each district be eligible for minimum level funding."
Article VII, section 8, Florida Constitution (1968), provides that state funds may be appropriated to the several counties, school districts, or special districts "upon such conditions as may be provided by general law." (Emphasis supplied). This provision mandates that the allocation and distribution of state funds to the schools be established by general law, which means that the formula cannot be fragmented so that part is found in general law and part in either the appropriation act or special law.
The purpose of article III, section 12, Florida Constitution (1968), was to preclude exactly what has happened in this case: fragmentation of the distribution formula whereby proper debate and consideration of the distribution formula wholly separate and apart from consideration of the appropriation law is not afforded.
I disagree also with the majority statement that the legislature may provide a "specific amount of additional money for specifically identified counties." Article III, section 12, Florida Constitution (1968), prohibits a special law granting additional money of a specific amount to a specific county for school purposes.
I would affirm the judgment of the trial court.
BOYD, J., concurs.
NOTES
[1] The condition in the appropriation law, chapter 78-401, is identified in section 1, item 353A, and reads in part as follows:

IN THE ALLOCATION OF THE FEFP EACH DISTRICT SHALL BE GUARANTEED A MINIMUM INCREASE OF 7.25% IN TOTAL POTENTIAL FUNDING PER UNWEIGHTED FTE FOR 1978-79 OVER THE TOTAL FUNDING AVAILABLE PER UNWEIGHTED FTE IN 1977-78, EXCEPT THAT THOSE DISTRICTS WITH A VALUE OF A MILL PER WFTE 20% OR MORE OVER THE STATEWIDE AVERAGE VALUE OF A MILL PER WFTE SHALL NOT RECEIVE SUCH GUARANTEE. TOTAL POTENTIAL FUNDING SHALL INCLUDE THE 1978-79 STATE ALLOCATION FOR CURRENT OPERATION EXCLUSIVE OF ALL CATEGORICAL PROGRAMS, POST-SECONDARY VOCATIONAL FEES AND THE CALCULATED YIELD OF 8 MILLS. TOTAL FUNDING AVAILABLE IN 1977-78 SHALL INCLUDE THE 1977-78 ALLOCATION FOR CURRENT OPERATION EXCLUSIVE OF ALL CATEGORICAL PROGRAMS, POST-SECONDARY FEES AND THE CALCULATED YIELD OF THE ACTUAL NONVOTED MILLAGE LEVIED IN 1977-78. THE CALCULATIONS SHALL BE BEFORE PRIOR YEAR ADJUSTMENTS AND SHALL BE ON THE SAME TAX ROLL USED IN THE OTHER FEFP CALCULATIONS. [Emphasis supplied.]
[2] The four counties are Charlotte, Collier, Highlands, and Martin.