Mr. Francisco M. Negron, Jr. General Counsel Escambia County School Board 215 West Garden Street Pensacola, Florida 32501
Dear Mr. Negron:
On behalf of the School Board of Escambia County, you have asked for my opinion on substantially the following question:
May a school board use discretionary half-cent sales surtax proceeds collected pursuant to section 212.055(6), Florida Statutes, to fund capital improvement projects for public charter schools where the charter school will operate on property not owned by the district school board and where the district school board will not retain any interest in any real property (including buildings) of the charter school?
In sum:
The Escambia County School Board may not use school capital outlay surtax revenues that were approved to fund capital construction projects on school district property and collected pursuant to section 212.055(6), Florida Statutes, to fund capital construction projects for a charter school owned and operated by a non-profit corporation when these revenues were not approved by the voters for this purpose. Section 228.0561, Florida Statutes, specifically provides a funding source that may be available to the Pensacola Beach Elementary Charter School for such capital outlay purposes as construction, renovation, repair, and maintenance of school facilities.
According to your letter, in 1996 the voters of Escambia County approved a referendum to permit the school board to collect a half-cent sales surtax pursuant to section 212.055(6), Florida Statutes, for capital improvement projects. At the time of the referendum, the school board adopted a list of approved projects that would be funded by the half-cent sales tax proceeds. One of those projects was the construction of a $200,000 multi-purpose facility for Pensacola Beach Elementary School. On June 30, 2002, Pensacola Beach Elementary School ceased to operate as a district-run public school and began operation as a charter school under section 228.056, Florida Statutes. On that date the school buildings were removed from the inventory of district property, and the School Board of Escambia County ceased to hold any real property interest in the school campus or its buildings.
Article VII, section 9(a), Florida Constitution, provides that "[c]ounties, school districts, and municipalities shall . . . be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution."
The exercise of the power of taxation, therefore, results from a constitutional authorization to school boards, implemented by statute, rather than the exercise of home rule powers pursuant to section 230.03(2), Florida Statutes.[1] Section 212.055(6), Florida Statutes, authorizes the school board of each county to levy a discretionary sales surtax at a rate not to exceed 0.5 percent. The levy must be made pursuant to a school board resolution that is conditioned to take effect only upon approval by a majority vote of those county electors who vote in a referendum on the matter. The resolution providing for the surtax must
"set forth a plan for use of the surtax proceeds for fixed capital expenditures or fixed capital costs associated with the construction, reconstruction, or improvement of school facilities and campuses which have a useful life expectancy of 5 or more years, and any land acquisition, land improvement, design, and engineering costs related thereto. . . ."[2]
You have asked whether funds raised by imposition of the surtax may be used for a charter school facility in which the school district holds no interest in either the real property or the buildings.
The referendum approving the school capital outlay surtax with which you are concerned occurred in 1996. While one of the projects approved for use of the surtax was construction of a multi-purpose facility for Pensacola Beach Elementary School, this school has recently become a charter school pursuant to section 228.056, Florida Statutes. It is not clear to me that voter approval for imposition of a surtax for a district school facility that was part of the district school system may necessarily carry over to approval of use of those tax funds for a charter school owned and operated independently of the district school system.
Section 212.055(6)(b), Florida Statutes, requires:
"The resolution [providing for imposition of the surtax] shall include a statement that provides a brief and general description of the school capital outlay projects to be funded by the surtax."
Thus, the statute requires that a general description of the projects to be funded by the surtax revenues be included on the referendum ballot on which approval of the surtax is requested.
Florida courts have recognized the general rule that tax revenues must be expended for the purposes for which they were collected, that is, funds raised by taxation for one purpose cannot be diverted to another use.[3]
Further, this office has stated that moneys collected pursuant to an original ordinance imposing a tourist development tax could only be used to accomplish the purposes set forth in the original plan for tourist development and could not be expended for the purposes set forth in a new ordinance or considered in a new tourist development plan.[4]
Section 212.055(6), Florida Statutes, providing that the ballot must contain a general description of the projects to be funded by the school capital outlay surtax, limits the expenditure of revenues from such surtax to those projects described on the ballot.[5] This office has noted previously that the statute only requires a general description of the projects to be funded, thus giving local governments some flexibility in describing the type of projects to be funded rather than requiring a description of each specific project itself.[6]
Based on the substantial change in the nature of ownership, operation and control of the Pensacola Beach Elementary School, I cannot say that school capital outlay surtax revenues collected pursuant to voter approval in 1996 may be used to fund capital outlay projects at the newly incorporated Pensacola Beach Elementary Charter School. You have not provided this office with the ballot language used in 1996 when this project was approved. I am, however, of the opinion that revenues from the local government infrastructure surtax may only be expended on projects that fall within the description contained on the ballot.
Legislative authorization for the creation of charter schools is contained in section 228.056, Florida Statutes. The statute states:
"Charter schools shall be part of the state's program of public education. All charter schools in Florida are fully recognized as public schools. A charter school may be formed by creating a new school or converting an existing public school to charter status."[7]
The statute also provides for the legal character of charter schools:
"A charter school shall organize as, or be operated by, a nonprofit organization. A charter school may be operated by a municipality or other public entity as provided for by law. As such, the charter school may be either a private or a public employer. As a public employer, a charter school may participate in the Florida Retirement System upon application and approval as a "covered group" under s. 121.021(34). If a charter school participates in the Florida Retirement System, the charter school employees shall be compulsory members of the Florida Retirement System. As either a private or a public employer, a charter school may contract for services with an individual or group of individuals who are organized as a partnership or a cooperative. Individuals or groups of individuals who contract their services to the charter school are not public employees."[8]
Pursuant to the Charter from the School Board of Escambia County to the Pensacola Beach Elementary Charter School, the charter is granted to "a non-profit corporation which has been formed for the purpose of operating a charter school in the school district[.]"[9] This non-profit corporation owns and operates the Pensacola Beach Elementary Charter School, and the Escambia County School District no longer has any legal interest in the school.
Based on this change in ownership and operation it does not appear that school capital outlay tax moneys collected to fund district school projects would be an appropriate resource for funding projects on property no longer owned or controlled by the district. I would note that section 228.0561, Florida Statutes, specifically provides a funding source that may be available to the Pensacola Beach Elementary Charter School for such capital outlay purposes as "construction, renovation, repair, and maintenance of school facilities."[10]
In sum, it is my opinion that the Escambia County School Board may not use school capital outlay surtax revenues that were approved to fund capital construction projects on school district property and collected pursuant to section 212.055(6), Florida Statutes, to fund capital construction projects for a charter school owned and operated by a non-profit corporation when these revenues were not approved by the voters for this purpose.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, s. 230.03(2), Fla. Stat., stating that district school boards shall operate, control, and supervise all free public schools in their districts and "may exercise any power except as expressly prohibited by the State Constitution or general law;" Op. Att'y Gen. Fla. 02-12 (2002) (school board may not make imposition of School Capital Outlay Surtax for term of years contingent upon cap being imposed on discretionary capital millage).
[2] Section 212.055(6)(c), Fla. Stat.
[3] See, e.g., Supreme Forest Woodmen Circle v. Hobe Sound Co.,189 So. 249 (Fla. 1939); Ops. Att'y Gen. Fla. 00-29(2000) and 77-26 (1977). Cf., Dickinson v. Stone, 251 So.2d 268 (Fla. 1971). And see, Ovenv. Ausley, 143 So. 588, 589-590 (Fla. 1932), stating:
"When an enforced contribution is exacted from the people by the power of taxation, it is for a specific public purpose, and the fund so raised is a trust fund in the hands of the legal custodians of it. There may exist circumstances in which the fund may be diverted to some other lawful purpose than that for which it was raised. Appropriation of public moneys for certain public purposes involves the power of taxation, and when the money is taken from a fund created by the levy of a tax and applied to some other purpose it is equivalent to the levy of a tax for such purpose. The limitation upon the rate of taxation is for the protection of taxpayers and to secure economy in the expenditure of public moneys."
[4] Attorney General Opinion 96-26 (1996). And see, Ops. Att'y Gen. Fla. 86-39 (1986), 82-54 (1982), and 77-26 (1977). See also, 85 C.J.S.Taxation s. 1057b, p. 646 (taxes levied and collected for particular purposes, cannot ordinarily be legally utilized for, or diverted to, any other purpose).
[5] Compare, s. 212.055(2)(g)2., Fla. Stat., authorizing a municipality located within a county with populations of 50,000 or less on April 1, 1992, or within a county designated as an area of critical state concern on the effective date of the act that imposed the surtax before July 1, 1992, to use the proceeds and interest for any public purpose provided certain conditions are met, including the amendment to the surtax ordinance.
[6] See, Ops. Att'y Gen. Fla. 01-45 (2001) and 00-06 (2000).
[7] Section 228.056(1), Fla. Stat.
[8] Section 228.056(8), Fla. Stat.
[9] See, "Whereas" clause, Charter from the School Board of Escambia County, Florida, to Pensacola Beach Elementary Charter School, dated June 6, 2002.
[10] See, s. 228.0561(2), Fla. Stat., indicating the types of projects for which charter school capital outlay funds may be used.