Dear Mr. Kruppenbacher:
On behalf of the School Board of Orange County, you have asked for my opinion on the following questions:
 1. Is the School Board of Orange County authorized to apply sales surtax revenues among the capital projects listed in the 2002 school board plan setting out the intended uses for proceeds of the sales surtax, to either the renovation of existing schools or to new school construction as it may determine from year to year in its discretion?
 2. Is the School Board of Orange County authorized to build new schools listed in the 2002 plan from legally-authorized, non-surtax revenues?
Question One
Section 212.055, Florida Statutes, authorizes local governments to levy a number of discretionary sales surtaxes, including an indigent care surtax, a school capital outlay surtax, a small county surtax, a transit system surtax and an infrastructure surtax. Subsection (6) makes provision for a school capital outlay surtax and authorizes the school board in each county to levy a discretionary sales surtax at a maximum rate of 0.5 percent. The tax levy may only be accomplished pursuant to a resolution conditioned to become effective upon approval by a majority vote of the electors of the county voting in the referendum.[1]
Pursuant to subparagraph (b):
"The resolution shall include a statement that provides a brief and general description of the school capital outlay projects to be funded by the surtax. The statement shall conform to the requirements of s.101.161 and shall be placed on the ballot by the governing body of the county. The following question shall be placed on the ballot:
____FOR THE ____CENTS TAX
____AGAINST THE ____CENTS TAX"
The statute also contains a requirement that the resolution contain a plan for use of the surtax proceeds:
 "The resolution providing for the imposition of the surtax shall set forth a plan for use of the surtax proceeds for fixed capital expenditures or fixed capital costs associated with the construction, reconstruction, or improvement of school facilities and campuses which have a useful life expectancy of 5 or more years, and any land acquisition, land improvement, design, and engineering costs related thereto. Additionally, the plan shall include the costs of retrofitting and providing for technology implementation, including hardware and software, for the various sites within the school district. Surtax revenues may be used for the purpose of servicing bond indebtedness to finance projects authorized by this subsection, and any interest accrued thereto may be held in trust to finance such projects. Neither the proceeds of the surtax nor any interest accrued thereto shall be used for operational expenses."[2]
Thus, the statute requires that a general description of the projects to be funded by the surtax revenues be included on the ballot on which approval of the surtax is required.
According to your letter, the Orange County School Board adopted a resolution authorizing a referendum for a half-cent sales surtax to be used for the construction of new school facilities, the renovation of existing school facilities, the installation of new computer technology, and the retrofitting of existing facilities for technology implementation. The ballot for the referendum provided:
"OFFICIAL BALLOT
ONE-HALF CENT PER DOLLAR SALES SURTAX FOR SCHOOL CONSTRUCTION AND RENOVATION, AND ONE-HALF MILL PROPERTY TAX ROLLBACK
SHALL THE SCHOOL BOARD OF ORANGE COUNTY, FLORIDA LEVY A ONE-HALF CENT PER DOLLAR SALES SURTAX TO FUND CONSTRUCTION AND RENOVATION OF SCHOOLS; LAND ACQUISITION; AND TECHNOLOGY WITH OVERSIGHT BY THE INDEPENDENT CITIZENS' CONSTRUCTION OVERSIGHT AND VALUE ENGINEERING ("COVE") COMMITTEE BEGINNING JANUARY 1, 2003 AND ENDING DECEMBER 31, 2015, PROVIDED THAT THE CAPITAL LOCAL SCHOOL PROPERTY TAX IS REDUCED BY ONE-HALF (0.5) MILL SO LONG AS THE SALES SURTAX IS IN EFFECT?
____ FOR THE ONE-HALF CENT TAX
____ AGAINST THE ONE-HALF CENT TAX"
The resolution also included the following language which was supplied to the Supervisor of Elections of Orange County to be provided to the electors, but was not included on the official ballot:
 "THE PROCEEDS OF THE SALES SURTAX SHALL BE EXPENDED BY THE SCHOOL BOARD FOR FIXED CAPITAL EXPENDITURES OR FIXED CAPITAL COSTS ASSOCIATED WITH THE CONSTRUCTION, RECONSTRUCTION OR IMPROVEMENT OF SCHOOL FACILITIES AND CAMPUSES WHICH HAVE A USEFUL LIFE EXPECTANCY OF FIVE (5) OR MORE YEARS, AND ANY LAND ACQUISITION, LAND IMPROVEMENT, DESIGN AND ENGINEERING COSTS RELATED THERETO, AND FOR THE COSTS OF RETROFITTING AND PROVIDING FOR TECHNOLOGY IMPLEMENTATION, FOR THE VARIOUS SITES WITHIN THE DISTRICT (THE "PLAN"), WITH OVERSIGHT BY THE INDEPENDENT CITIZENS' CONSTRUCTION OVERSIGHT AND VALUE ENGINEERING ("COVE') COMMITTEE. SUCH PROCEEDS AND INTEREST THEREON MAY ALSO BE USED FOR THE PURPOSE OF MAKING LEASE PAYMENTS UNDER LEASE PURCHASE AGREEMENTS AND/OR SERVICING BOND INDEBTEDNESS TO FINANCE PROJECTS AUTHORIZED BY THE PLAN."
The resolution was adopted May 2, 2002, and the voters of Orange County approved the levy of the sales surtax in a referendum held on September 10, 2002.
Section 212.055(6)(c), Florida Statutes, requires that the resolution providing for the imposition of the surtax "shall set forth a plan for use of the surtax proceeds. . . ." The School Board of Orange County complied with this requirement and adopted a "Plan for Use of Sales Tax for Capital Outlay Program" which was adopted concurrently with the resolution. Section 5 of the resolution states that the proceeds of the surtax are to be expended "in accordance with the Plan," and adopted the plan's "description of the capital outlay projects to be funded" as part of the resolution. Under the plan:
"Revenues from the sales tax generated pursuant to Section 212.055(6) Florida Statutes will fund:
 • Repair or replacement of at least 136 schools;
 • Construction of at least 25 new schools, including site acquisition and a capital renewal allowance;
 • Retrofitting for technology[.]"
The plan also requires that the scope of the projects will be based on an assessment of
the condition of the facility and educational program requirements; that the prioritization of projects will be determined by application of objective criteria; and that a citizens' oversight committee will oversee all projects throughout the term of the sales tax.[3]
Florida courts have recognized the general rule that tax revenues must be expended for the purposes for which they were collected, that is, funds raised by taxation for one purpose cannot be diverted to another use.[4] Further, this office has concluded that moneys collected pursuant to an original ordinance imposing a tourist development tax could only be used to accomplish the purposes set forth in the original plan for tourist development and could not be expended for the purposes set forth in a new ordinance or considered in a new tourist development plan.[5]
In Attorney General's Opinion 2006-38, this office was asked to determine whether a school board was authorized to use school capital outlay surtax proceeds collected pursuant to section 212.055(6), Florida Statutes, for purposes related to those described in the bond referendum. The Marion County School Board had adopted a resolution, which was approved, but was encountering difficulty in locating acceptable building sites for new school construction and in finding sufficient funds to accomplish the plan specified in the referendum. Based on these considerations, the superintendent of schools asked whether the school board could: 1) properly use surtax proceeds to construct new classroom wings on existing centrally located elementary schools rather than build a new central elementary school, and 2) combine a middle school and an elementary school into a single K-8 facility.
In considering the superintendent's request, this office reviewed the terms of the resolution and noted that the ballot language used by the school board was relatively general and would provide some flexibility in implementing its plan. However, the terms of the resolution, were incorporated onto the ballot by including the language "all as more specifically described in Resolution 04-01 of such Board. . . ." Thus, the ballot language itself incorporated the resolution onto the ballot and the resolution included the detailed plan for expenditure of surtax revenues. Such is not the case with the Orange County ballot.
However, section 212.055(6)(c), Florida Statutes, requires that the resolution providing for the imposition of the surtax set forth a plan for the use of the proceeds from the surtax. The Orange County Plan is detailed in an "Exhibit to the Resolution" which states that tax revenues generated pursuant to section 212.055(6) Florida Statutes will fund "[r]epair or replacement of at least 136 schools; [c]onstruction of at least 25 new schools, including site acquisition and a capital renewal allowance; [r]etrofitting for technology[.]" Section 212.055, Florida Statutes, requires that each type of surtax authorized by this section specifically set forth "the purpose for which the proceeds may be expended[.]"[6] It is my opinion that this plan was considered by the voters and was an assurance by the school board that these moneys would be used as described in the plan if the sales surtax was approved.
Therefore, in light of the language of the plan adopted by the School Board of Orange County which states that revenues from the sales tax generated pursuant to section 212.055(6), Florida Statutes, would be used to repair or replace at least 136 district schools and construct at least 25 new schools, it is my opinion that the school board must, over the course of the levy,[7] use surtax moneys to accomplish this goal. However, the ballot language and the plan for using these surtax proceeds do not mandate the accomplishment of these projects in any particular order and the school board has flexibility to work within the terms of the plan as it prioritizes the use of these funds. Nonetheless, the school district must be mindful to accomplish the purpose of the levy which includes new construction as well as renovation.
Question Two
I am not aware of, and you have not brought to my attention, any provision of state law that would preclude the use of properly appropriated funds for repair or replacement of school district projects. The fact that surtax revenues are committed to a particular school capital outlay project would not appear to preclude the use of other funds toward the accomplishment of the district's goals.[8]
While the school board should not use non-surtax funds to supplant the tax revenues raised for this purpose, in the absence of any authority to the contrary, it would appear that the school board may commit other properly collected and appropriated non-surtax revenues in addition to those surtax revenues collected pursuant to section 212.055(6), Florida Statutes, to build the new schools listed in the 2002 plan.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] Section 212.055(6)(a), Fla. Stat.
[2] Section 212.055(6)(c), Fla. Stat.
[3] See Appendix 3, Exhibit "A", Attorney General's Opinion request letter from Frank Kruppenbacher, dated December 21, 2007.
[4] See, e.g., Supreme Forest Woodmen Circle v. Hobe Sound Co.,189 So. 249 (Fla. 1939); Ops. Att'y Gen. Fla. 00-29 (2000) and 77-26 (1977).Cf., Dickinson v. Stone, 251 So. 2d 268 (Fla. 1971). And see, Oven v.Ausley, 143 So. 588, 589-590 (Fla. 1932), stating:
 "When an enforced contribution is exacted from the people by the power of taxation, it is for a specific public purpose, and the fund so raised is a trust fund in the hands of the legal custodians of it. There may exist circumstances in which the fund may be diverted to some other lawful purpose than that for which it was raised. Appropriation of public moneys for certain public purposes involves the power of taxation, and when the money is taken from a fund created by the levy of a tax and applied to some other purpose it is equivalent to the levy of a tax for such purpose. The limitation upon the rate of taxation is for the protection of taxpayers and to secure economy in the expenditure of public moneys."
And see Op. Att'y Gen. Fla. 02-55 (2002) (school capital outlay tax moneys collected to fund district school projects would not be an appropriate resource for funding projects on property no longer owned or controlled by the school district).
[5] See Op. Att'y Gen. Fla. 96-26 (1996). And see Ops. Att'y Gen. Fla. 86-39 (1986), 82-54 (1982), and 77-26 (1977). See also 85 C.J.S.Taxation s. 1057b, p. 646 (taxes levied and collected for particular purposes, cannot ordinarily be legally utilized for, or diverted to, any other purpose).
[6] See 212.055, Fla. Stat.
[7] School Board of Orange County Resolution No. 05/02/02 NC-1, s. 2, provides that the surtax levy will remain in force from January 1, 2003, until December 31, 2015, unless repealed or reduced prior to that time.
[8] See, e.g., s. 1013.66(1), Fla. Stat., which provides that "[c]apital projects are to be financed in accordance with s. 9(a)(2), Art. XII of the State Constitution, as amended, or from other legally available state funds or grants, donations, or matching funds, or by a combination of such funds."