Dear Mr. Mantzaris:
As special legal counsel to the South Lake County Hospital District, you have asked for my opinion on substantially the following questions:
1. Does the South Lake County Hospital District have the authority to allocate district funds as an intergovernmental transfer to the Florida Agency for Health Care Administration (AHCA) to facilitate South Lake Hospital's participation in the Medicaid Low Income Pool program?
2. Does the South Lake County Hospital District have the authority to allocate district funds as an intergovernmental transfer to AHCA for the benefit of Orlando Health, Inc., which owns hospitals in Orange and Seminole Counties, to participate in a program known as the Medicaid buyback program?
In sum:
1. The South Lake County Hospital District is authorized to allocate district funds as an intergovernmental transfer to the Florida Agency for Health Care Administration to facilitate South Lake Hospital's participation in the Medicaid Low Income Pool program.
2. The South Lake County Hospital District is authorized to allocate district funds as an intergovernmental transfer to the Florida Agency for Health Care Administration for the benefit of Orlando Health, Inc., which owns hospitals in Orange and Seminole Counties, to participate in a program known as the Medicaid buyback program so long as the district satisfies the requirements of its enabling legislation.
Question One
The South Lake County Hospital District is an independent special district
located in Lake County and created by Chapter 2001-290, Laws of Florida. The governing body of the district is a board of trustees[1]
with "all the powers and authority permitted by the Constitution and laws of the State of Florida for providing health care services."[2] To accomplish this legislative directive, the board is authorized to acquire real and personal property that may be necessary for the construction and maintenance of hospital facilities;[3] issue negotiable notes, revenue bonds, anticipation notes, bonds, and refunding bonds;[4] operate one or more hospitals or health care facilities within the district and participate with other hospitals outside the district to jointly provide health care services "within or outside the hospital district[.]"[5]
The board also has ad valorem taxing power.[6]
The South Lake County Hospital District's powers are measured by the terms of the act under which it is organized and it can exercise no authority that has not clearly been granted to it by the Legislature or which is necessarily implied from the powers conferred.[7] Thus, as a special district, the South Lake County Hospital District's powers are limited by the grant of authority contained in Chapter 2001-290, Laws of Florida.
In 2006, the State of Florida established the Low-Income Pool (LIP) program as one of the components of a broad-ranging reform of the Florida Medicaid Program. The program is a joint federal-state program requiring funding from both federal and a non-federal sources. The non-federal share of the LIP program may be provided directly by states or may be derived from "local sources" and is administered by the Florida Agency for Health Care Administration.[8] A capped annual allotment of one billion dollars constitutes the pool from which funds are drawn in this state and these funds come primarily from intergovernmental transfers from local governmental entities that are supplemented with federal funds.[9]
The low-income pool program was created with a waiver from the federal government to help hospitals facing increased unreimbursed costs for treating the uninsured who do not qualify for traditional Medicaid. Distributions from the LIP program are intended "to ensure continued government support for the provision of health care services to Medicaid, underinsured and uninsured populations."[10]
The Agency for Health Care Administration was authorized to seek and implement this demonstration project by the Legislature in section409.91211, Florida Statutes. Pursuant to section 409.91211, Florida Statutes:
"It is the intent of the Legislature that the low-income pool plan required by the terms and conditions of the Medicaid reform waiver and submitted to the federal Centers for Medicare and Medicaid Services propose the distribution of the above-mentioned program funds based on the following objectives:
1. Assure a broad and fair distribution of available funds based on the access provided by Medicaid participating hospitals, regardless of their ownership status, through their delivery of inpatient or outpatient care for Medicaid beneficiaries and uninsured and underinsured individuals;
2. Assure accessible emergency inpatient and outpatient care for Medicaid beneficiaries and uninsured and underinsured individuals;
3. Enhance primary, preventive, and other ambulatory care coverages for uninsured individuals;
4. Promote teaching and specialty hospital programs;
5. Promote the stability and viability of statutorily defined rural hospitals and hospitals that serve as sole community hospitals;
6. Recognize the extent of hospital uncompensated care costs;
7. Maintain and enhance essential community hospital care;
8. Maintain incentives for local governmental entities to contribute to the cost of uncompensated care;
9. Promote measures to avoid preventable hospitalizations;
10. Account for hospital efficiency; and
11. Contribute to a community's overall health system."
The practical effect of participation in the LIP program is that local health care entities receive not only the funds contributed on their behalf through intergovernmental transfers, but participation enables them access to a share of the federal funds in the pool for purposes of serving their uninsured and underinsured populations.
Florida courts have recognized the general rule that tax revenues must be expended for the purposes for which they were collected, that is, funds raised by taxation for one purpose cannot be diverted to another use.[11] Following this line of reasoning, this office has concluded that moneys collected pursuant to an original ordinance imposing a tourist development tax could only be used to accomplish the purposes set out in the original plan for tourist development and could not be expended for the purposes set forth in a new ordinance or considered in a new tourist development plan.[12]
Copies of the two most recent ad valorem tax and budget resolutions for the South Lake County Hospital District have been provided to this office. These resolutions state that the millage levied "is for principal of and interest on promissory notes and mortgages; and to pay for the acquisition, construction, maintenance, operation, equipment, and administration of facilities owned, leased, or operated by specified not-for-profit corporations; and the cost of emergency room service within the District[.]" (e.s.) Low Income Pool program funds are distributed to qualified health care providers such as hospitals and clinics for furnishing health care services to the uninsured and underinsured. The intergovernmental transfer of district funds to AHCA would appear to satisfy the terms of the tax levy as payments supporting the operation and administration of the facilities and the cost of emergency room service and would, therefore, appear to be authorized.
Therefore, it is my opinion that the South Lake County Hospital District is authorized to allocate district funds as an intergovernmental transfer to the Florida Agency for Health Care Administration to facilitate South Lake Hospital's participation in the Medicaid Low Income Pool program.
Question Two
You have also asked whether the South Lake Hospital District is authorized to allocate district funds to participate in a Medicaid buyback program which would allow designated hospitals in Orange and Seminole Counties to receive additional Medicaid
payments for inpatient and outpatient hospital services. According to information you have supplied to this office and conversations with and material from AHCA, the program allows hospitals to buy back the amount of Medicaid reductions in the inpatient rate for individual hospitals. During fiscal year 2008-2009, the Florida Legislature generally reduced payments for inpatient and outpatient hospital services to Medicaid patients.[13] The hospitals are eligible to have reduced payments restored through grants and donations from state, county, or other governmental funds by participating in the Medicaid buyback program.[14]
As discussed in detail above, tax revenues may only be expended for the purposes for which they were imposed. The budget resolutions for the South Lake
County Hospital provide that these requests were "for principal of and interest on promissory notes and mortgages; and to pay for the acquisition, construction, maintenance, operation, equipment, and administration of facilities owned, leased, or operated by specified not-for-profit corporations; and the cost of emergency room service within the District[.]"[15] The enabling legislation for the district requires that the "specified not-for-profit corporations" must have the district as a member "entitled to
appoint not less than one-half of the governing board of such corporation[.]"[16]
The allocation of district funds for the benefit of these hospitals participating in the Medicaid buyback program would appear to constitute payment "for the . . . operation . . . and administration of facilities owned, leased, or operated by specified not-for-profit corporations" and would come within the scope of the tax levy so long as the district is a member of the corporation and entitled to appoint members to the governing board as required by the district's enabling legislation.
As in my response to Question One, the term "operation" is broad and would appear to encompass activities supporting the mission of the district, that is, providing health care services both "within or outside the hospital district[.]"[17] Accessing operating costs for the treatment of non-Medicaid recipients and expenditures necessary to recover additional Medicaid dollars appear to be legitimate expenditures directly related to the operation and administration of the South Lake Hospital District. Moreover, you have advised that "Orlando Health hospitals, although located outside of the District, provide health care, including indigent care, to District residents."
Therefore, it is my opinion that the South Lake County Hospital District is authorized to allocate district funds as an intergovernmental transfer to the Florida Agency for Health Care Administration for the benefit of Orlando Health, Inc., which owns hospitals in Orange and Seminole Counties, to participate in a program known as the Medicaid buyback program so long as the district satisfies the requirements of its enabling legislation.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] Section 2(2)(a), Ch. 2001-290, Laws of Fla.
[2] Section 4(1), Ch. 2001-290, Laws of Fla.
[3] Section 4(1)(a), Ch. 2001-290, Laws of Fla.
[4] Section 4(1)(d), Ch. 2001-290, Laws of Fla.
[5] Section 4(1)(e), Ch. 2001-290, Laws of Fla.
[6] Section 9, Ch. 2001-290, Laws of Fla.
[7] See Forbes Pioneer Boat Line v. Board of Commissioners ofEverglades Drainage District, 82 So. 346 (Fla. 1919); Ops. Att'y Gen. Fla. 08-02 (2008), 80-55 (1980), 74-169 (1974), and 73-334 (1973). Cf.
Op. Att'y Gen. Fla. 83-44 (1983), concluding that the Florida Inland Navigation district does not have statutory authority to expend district monies to fund a special marine patrol troop, to provide funds on a matching basis and as outright grants for public information and educational programs.
[8] See 42 U.S.C. s. 1396a(a)(2); and see 42 U.S.C. s. 1396b(w)(6)(A) (prohibiting restrictions on a "States' use of funds . . . derived from State or local taxes transferred from . . . units of government within a State as the non-Federal share of [Medicaid] expenditures"); 42 C.F.R. s. 433.51.
[9] See State of Florida, Agency for Health Care Administration,http://www.fdhc.state.fl.us/Medicaid/medicaid_reform/lip/lip.shtml.
[10] See State of Florida, Agency for Health Care Administration,http://www.fdhc.state.fl.us/Medicaid/medicaid_reform/lip/pdf/cms_stc.pdf, at p. 24.
[11] See, e.g., Supreme Forest Woodmen Circle v. Hobe Sound Company,189 So. 249 (Fla. 1939); Ops. Att'y Gen. Fla. 00-29 (2000) and 77-26 (1977). Cf. Dickinson v. Stone, 251 So. 2d 268 (Fla. 1971). And see Ovenv. Ausley, 143 So. 588, 589-590 (Fla. 1932), stating:
"When an enforced contribution is exacted from the people by the power of taxation, it is for a specific public purpose, and the fund so raised is a trust fund in the hands of the legal custodians of it. There may exist circumstances in which the fund may be diverted to some other lawful purpose than that for which it was raised. Appropriation of public moneys for certain public purposes involves the power of taxation, and when the money is taken from a fund created by the levy of a tax and applied to some other purpose it is equivalent to the levy of a tax for such purpose. The limitation upon the rate of taxation is for the protection of taxpayers and to secure economy in the expenditure of public moneys."
And see Op. Att'y Gen. Fla. 02-55 (2002) (school capital outlay tax moneys collected to fund district school projects would not be an appropriate resource for funding projects on property no longer owned or controlled by the school district).
[12] See Op. Att'y Gen. Fla. 96-26 (1996). And see Ops. Att'y Gen. Fla. 86-39 (1986), 82-54 (1982), and 77-26 (1977). See also C.J.S.Taxation s. 1665 "Prohibition on Diversion" (taxes levied and collected for particular purposes, cannot ordinarily be utilized for, or diverted to, any other purpose).
[13] See s. 3, Ch. 2008-152, Laws of Fla., specific appropriations 206 and 211.
[14] See, e.g., Conference Report on House Bill 5001, General Appropriations Act for Fiscal Year 2008-2009, Section 3 — Human Services, Item 206, pp. 50 — 51.
[15] See Resolution 09/1, South Lake County Hospital District, effective October 1, 2008, and Resolution 07/1, effective October 1, 2006.
[16] Section 8, Ch. 2001-290, Laws of Fla.
[17] See s. 4(1)(e), Ch. 2001-290, Laws of Fla.